THEODORE JAMES et al., as Administrators of the Estate of MARTIN JAMES, Deceased, Respondents, v EBER BROS. WINE & LIQUOR CORP., Appellant, et al., Defendants.

Fourth Department, February 2, 1990

APPEARANCES OF COUNSEL

*Nixon, Hargrave, Devans & Doyle (Michael Wolford* of counsel), for appellant.

*Richard G. Vogt (Melvin Bressler* of counsel), for respondents.

**OPINION OF THE COURT**

GREEN, J.

Defendant Eber Bros. Wine & Liquor Corp. (Eber)

appeals from a jury verdict in a wrongful death action which awarded plaintiffs $250,000 compensatory damages and $2,500,000 punitive damages. Eber's principal contentions on appeal are that the evidence was insufficient to support the punitive award and that the compensatory award is excessive, against the weight of the evidence and based on the erroneous admission of testimony from plaintiffs' expert economist. We agree with Eber that the award of punitive damages must be vacated but otherwise we affirm.

The facts may be stated briefly. On June 25, 1984 at approximately 8:30 P.M., a car operated by defendant Stephen VanDekken collided with a motorcycle operated by Martin James on Route 64, a two-lane highway in the Town of Mendon. James was killed instantly and VanDekken was seriously injured. VanDekken was employed by Eber as a liquor salesman and was driving his established sales route on the day of the accident. Prior to the accident he had visited several of his customers' taverns where he consumed alcohol. He arrived at Palmers Tavern at 5:30 P.M. and left an hour later. According to tavern employees he did not appear intoxicated. VanDekken had a few more customers to call on when he left Palmers.

State Police Officer Michael Manning arrived at the accident scene at 8:35 P.M. and from the position of the vehicles involved, he concluded that James was traveling south and was struck by VanDekken traveling north but in James' lane of traffic. There were no witnesses to the accident. James was pronounced dead at the scene. Manning found VanDekken in his car and smelled the odor of alcohol on his breath. VanDekken was taken to the hospital and was arrested there for criminally negligent homicide, driving while intoxicated, and related traffic offenses. VanDekken pleaded guilty to the criminal charges and violations prior to trial. He returned to work for Eber three months after the accident, but his employment was conditioned on his retaining his State Liquor Authority solicitor's permit and arranging for someone to drive him on his sales route.

At trial, plaintiffs based their entitlement to punitive damages on the theory that Eber knew of VanDekken's habit of drinking on the job yet did nothing to change his behavior. Plaintiffs repeatedly referred to a previous incident at Greenstreets Tavern, one of VanDekken's business accounts, in which he fought with a patron and argued with a female acquaintance about whether he was too intoxicated to drive

home. Plaintiffs also suggested that Eber's offer of continued employment to VanDekken after he recovered from the accident was in exchange for VanDekken's promise to testify favorably for Eber at trial.

On the issue of compensatory damages plaintiffs established that decedent was 29 years of age, lived at home, did not have a steady girlfriend, was a certified airplane mechanic, earned approximately $27,000 a year and paid his parents $150 a month in rent. Decedent's father testified that his son contributed an average of 7 to 8 hours a week working on the house, helped him build an addition, often cut wood, and bought gifts for his siblings. Plaintiffs' expert economist, over objection, testified that the projected monetary loss of household services performed by decedent was $92,641 and that loss of rental payments was $55,526. Those projections were based upon the assumptions that decedent would remain single and continue to reside in his parents' house until the end of his mother's life expectancy 29 years hence. The expert used statistics involving married men with children to compute the household services projection, but halved the figures to account for decedent's status and to make his estimates conservative.

■ In defense, Eber first argues that the punitive damage award is not supported by the evidence because there was no proof of any complicity in or ratification of VanDekken's action. We agree. "[P]unitive damages can be imposed on an employer for the intentional wrongdoing of its employees only where management has authorized, participated in, consented to or ratified the conduct giving rise to such damages, or deliberately retained the unfit servant * * * or the wrong was in pursuance of a recognized business system of the entity" (Loughry v Lincoln First Bank, 67 NY2d 369, 378). On this record there is insufficient evidence that Eber condoned or ratified VanDekken's conduct.

Although Eber did not strictly prohibit its salesmen from having an occasional drink with a customer to foster business relationships, Eber did not permit or condone drinking on a regular basis and, on the contrary, warned employees against such practice. Moreover, there was no evidence to support plaintiffs' claim that VanDekken had a drinking "problem" or, even if he had, that Eber was aware of it. VanDekken had no history of driving while intoxicated or other alcohol-related incidents. The fact that VanDekken listed on his employment application an alcohol-related arrest in 1972, over 12 years before the accident, was not probative of a present drinking

problem. The incident at Greenstreets, which occurred three months before the accident, was not sufficient to put Eber on notice of any alleged alcohol-related problem because there was no evidence that anyone at Eber knew that the incident may have involved VanDekken's drinking. Eber's investigation of the incident revealed only that a minor altercation had taken place at a bar and the police report made no mention of VanDekken's intoxication.

■ Plaintiffs' reliance on VanDekken's continued employment with Eber to support a claim of punitive damages is misplaced because his employment was conditioned upon his retaining his solicitor's permit from the State Liquor Authority and arranging for someone to drive him on his sales route. It was just as likely that Eber's decision to retain VanDekken was made, not to hide anything or to assure his favorable trial testimony, but because he was a productive and trusted employee for over six years and the accident was an isolated incident on an otherwise clean record. Although the punitive damages standard as interpreted by the courts in New York require language such as "deliberately retaining an unfit servant", this language focuses on a situation where an employer has knowledge of his employee's bad acts, deliberately retains the servant knowing him to be unfit, and the employee causes an injury. Mere retention of an employee does not constitute ratification of unfitness (see, *Rainess v American League Baseball Club,* 185 NYS 582, 583).

Plaintiffs argue that this court's decision in *O'Donnell v K-Mart Corp.* (100 AD2d 488) is controlling. There, a security officer detained and assaulted a mentally retarded customer. When the incident was reported to the store manager, he failed to require the filing of a written incident report and told the security officer he should "cover" himself. Thus, an award of punitive damages against K-Mart was justified because store employees participated in ridiculing, restraining, handcuffing, and detaining plaintiff and the manager's admonition to the security officer that he should "cover" himself was so reprehensible that the jury could have viewed it as ratifying the security guard's conduct. Here, however, there is no such evidence of ratification. Eber openly acknowledged VanDekken's conduct and there was no evidence of any agreement between Eber and VanDekken to cover up any facts. Accordingly, the jury award of punitive damages is not supported by sufficient evidence. In order for an award for punitive damages to stand against an employer, there must be

more than a showing that the employee was acting in the scope of his employment *(see, Loughry v Lincoln First Bank, supra).*

■ There is no merit to Eber's remaining claims. The compensatory award is not excessive and does not shock the conscience of this court *(see, James v Shanley,* 73 AD2d 752; *Welty v Brown,* 57 AD2d 1000, 1001, *appeal dismissed* 42 NY2d 995; *cf.,* CPLR 5501 [c], as amended by L 1986, ch 682, §§ 10, 12, eff July 30, 1986). The amount of pecuniary loss in a wrongful death action is often "uncertain and problematical" and "may properly include probable, or even possible, benefits which might inure to the parents from their child's entire life, taking into consideration the possibility of failure or misfortune" *(Franchell v Sims,* 73 AD2d 1, 5). The evidence established that decedent was a 29-year-old talented mechanic and a loving and loyal son who had made significant contributions to his family. The testimony of plaintiffs' expert economist was properly admitted *(see, De Long v County of Erie,* 60 NY2d 296) and subject to thorough cross-examination. The proper weight to be accorded such testimony was for the jury to determine.

■ The jury finding that VanDekken was acting within the scope of his employment with Eber at the time of the accident was not against the weight of the evidence. The proof established that VanDekken had at least two other customers to call on prior to the accident and the accident site was en route to those business accounts. The mere fact that, prior to his tortious act, an employee may have combined business with pleasure does not necessarily relieve the employer of liability *(see, Riley v Standard Oil Co.,* 231 NY 301, 305; 52 NY Jur 2d, Employment Relations, § 348). The issue whether a defendant is acting within the scope of his employment is a question of fact for the jury and on this record the jury finding is not irrational *(see, Riviello v Waldron,* 47 NY2d 297, 303).

We have considered Eber's remaining claims and find each one lacking in merit. Accordingly, the judgment is modified by vacating the punitive damage award and otherwise the judgment is affirmed.

BOOMER, J. P., PINE, LAWTON and DAVIS, JJ., concur.

Order and judgment unanimously modified on the law, and, as modified, affirmed, without costs, in accordance with an opinion by GREEN, J.