■ Jamie Acton, Respondent, v Stephen O. Nalley, Doing Business as Impact Auto and S & S Auto Sales, Appellant. [831 NYS2d 277]—

Spain, J. Appeal from a judgment of the Supreme Court (McCarthy, J.), entered October 18, 2005 in Rensselaer County, upon a verdict rendered in favor of plaintiff.

Defendant owns and operates auto salvage businesses under the names of Impact Auto and S & S Auto Sales out of a junkyard site located in the Town of Nassau, Rensselaer County. His son, Steven Nalley, worked with defendant, assuming a managerial role when defendant was not present. In August 2002, Nalley agreed to provide plaintiff and his friend Justin Barnhardt with a car from his father's junkyard for use in a demolition event to be held at the Lebanon Valley Speedway on August 26, 2002.

On the afternoon of the day of the event, plaintiff, Barnhardt and Barnhardt's girlfriend were preparing the vehicle, which was parked in a space alongside the main internal road in the junkyard. Plaintiff was removing the glass from the windows and other salvageable parts while Barnhardt used spray paint to decorate the exterior of the vehicle. Nalley was working that afternoon, moving cars with a front-end loader—a machine equipped with 12-foot forks which can be used to lift and move vehicles—and he stopped the loader to talk to plaintiff and Barnhardt. According to plaintiff—whose testimony was essentially uncontroverted—they agreed that plaintiff would drive the car up to the shop so that Nalley could remove the windshield. While Barnhardt and his girlfriend began to walk back toward the shop, plaintiff got inside the vehicle and waited to pull out until after Nalley had passed by with the loader. Nalley, however, instead picked up the car with the loader—with plaintiff inside—and moved it a short distance before the car suddenly dropped back to the ground.

Plaintiff felt a severe pain in his lower back. He exited the vehicle and lay on the ground for awhile before eventually driving himself home. He later went to the emergency room where it was discovered that he had fractured his back at the L-1 vertebra. As a result, plaintiff wore a brace for approximately six weeks and attended physical therapy for another eight weeks. By the time of trial, the fracture of plaintiff's vertebra had healed but the front portion of the vertebra remained permanently compressed 38%.

Plaintiff commenced this action, alleging that defendant is vicariously liable for the injuries sustained by plaintiff as a result of Nalley's negligence. A jury returned a verdict in plaintiff's favor and awarded $75,000 for past pain and suffering, $1,656 for lost wages and $750,000 for future pain and suffering. Defendant appeals.

Defendant contends that the jury verdict finding him vicariously liable should be set aside as against the weight of the credible evidence because the evidence does not support a finding that Nalley's actions were within the scope of his employment or in furtherance of defendant's business (*see N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 251 [2002]). It was undisputed, however, that Nalley routinely used the loader to pick up junked cars as part of his employment and was so engaged on the day of the accident. Although it may be difficult to imagine how plaintiff's version of events, i.e., Nalley's act of picking up an occupied vehicle which was parked in a space off the side of the roadway, could have been within the scope of Nalley's employment or in furtherance of defendant's business, it was not conclusively established that Nalley knew the vehicle was occupied at the time he lifted the car. Significantly, defendant—Nalley's father—testified that Nalley told him that he had picked up the car to move it because it was blocking the roadway, providing a viable business-related purpose for Nalley's actions which the jury was free to credit.

Further, it cannot be said that the evidence supporting a contrary finding, i.e., evidence that Nalley's actions were intentional, perhaps the result of an extremely misguided joke, "so preponderates in favor of the defendant that [the verdict] could not have been reached on any fair interpretation of the evidence" (*O'Boyle v Avis Rent-A-Car Sys.*, 78 AD2d 431, 439 [1981]; *see Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]). Indeed, Nalley never testified and the record contains no direct evidence of a nonbusiness-related purpose for his actions. Thus, on this record, we find that the jury's conclusion that Nalley was acting within the scope of his employment at the time of plaintiff's injury is not against the weight of the evidence (*see Riviello v Waldron*, 47 NY2d 297, 302-304 [1979]; *Savarese v City of N.Y. Hous. Auth.*, 172 AD2d 506, 508 [1991]; *James v Eber Bros. Wine & Liq. Corp.*, 153 AD2d 329, 334 [1990], *lv denied* 75 NY2d 711 [1990]; *cf. Overton v Ebert*, 180 AD2d 955, 956-957 [1992], *lv denied* 80 NY2d 751 [1992]).

Next, defendant challenges the jury's award of $750,000 in future damages. While "considerable deference [is] accorded to the jury's assessment" of the amount of damages in a personal

injury action (*Douglass v St. Joseph's Hosp.*, 246 AD2d 695, 697 [1998]), an "award should be set aside where it deviates materially from reasonable compensation for the injuries sustained" (*Osiecki v Olympic Regional Dev. Auth.*, 256 AD2d 998, 999 [1998]; *see* CPLR 5501 [c]; *Pinkowski v Fuller*, 5 AD3d 907, 908 [2004]). Plaintiff testified at trial that he continues to experience pain on a daily basis, but he is able to control it with nonprescription pain medication. He has resumed work full time and, with some limitations, he participates in recreational activities which he enjoyed prior to the accident, such as riding ATVs and snowmobiles. Plaintiff's expert—an orthopedic surgeon—testified that the fracture to plaintiff's back had healed, but the 38% compression in his vertebra was permanent. He noted plaintiff's complaint of continuing pain and opined, with a reasonable degree of medical certainty, that, in the future, "there will be pain, arthritic changes and possibly further exacerbation of his pain relative to the damage that he sustained to his lower back." The doctor later qualified this testimony, stating that plaintiff's condition "potentially" could result in arthritic changes which will cause further pain and limit his activities in later years. He also testified that plaintiff has an "increased risk" of requiring orthopedic medical treatment for pain such as injections or surgery, and that he has "a very good chance of having life-long problems" especially if he fails to maintain ideal body weight and good abdominal muscles. Defendant did not present an expert witness to refute this testimony.

"Because pain and suffering awards are not subject to precise quantification, examination of comparable cases is necessary to determine whether the award materially deviated from reasonable compensation" (*Osiecki v Olympic Regional Dev. Auth.*, *supra* at 1000 [citation omitted]). After our review of the record and similar cases, we conclude that the jury's award for future pain and suffering was excessive (*see Donatiello v City of New York*, 301 AD2d 436, 437 [2003] [herniated disk with nerve root compression, daily pain with speculative need for future surgery; future pain and suffering award reduced to $75,000]; *Valentin v City of New York*, 293 AD2d 313, 314 [2002] [spinal fusion surgery followed by pain requiring prescription medications and nerve root injections with likelihood of further surgery; future pain and suffering award increased to $450,000]; *Donlon v City of New York*, 284 AD2d 13, 19-20 [2001] [fracture of two vertebrae and disk herniation, pain controlled by nonprescription medication; future pain and suffering award reduced to $400,000]; *Skow v Jones, Lang & Wooton Corp.*, 240 AD2d 194, 195 [1997], *lv denied* 94 NY2d 758 [1999] [herniated disc and

required pain medication indefinitely; future pain and suffering award increased to $125,000]; *Stedman v Bouillon*, 234 AD2d 876, 879 [1996] [permanent and disabling knee, shoulder and back pain requiring brace and the necessity for further surgery "most probable"; future pain and suffering award for 77-year-old man increased to $350,000]). Accordingly, we set aside the verdict and order a new trial with respect to the award for future pain and suffering, unless plaintiff stipulates to a reduced award for future pain and suffering in the amount of $450,000.

Cardona, P.J., Peters, Carpinello and Kane, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as awarded plaintiff $750,000 for future pain and suffering; new trial ordered on the issue of said damages unless, within 20 days after service of a copy of the order herein, plaintiff stipulates to reduce the amount of the award for future pain and suffering to $450,000, in which event said judgment, as so reduced, is affirmed.