■ DINO PETRILLI, Respondent, v FEDERATED DEPARTMENT STORES, INC., et al., Appellants. [838 NYS2d 673]—

Spain, J. Appeals (1) from an order of the Supreme Court (Lebous, J.), entered July 19, 2006 in Broome County, which, inter alia, denied a motion by defendant May Department Stores Company to set aside a verdict rendered in favor of plaintiff, and (2) from a judgment of said court, entered August 3, 2006 in Broome County, upon said verdict.

Plaintiff, a self-employed hair stylist, sustained injuries to his left ankle, right arm, right wrist, lower back, neck and shoulder when he slipped and fell on clean, dry tile flooring at the entrance of a department store owned by defendants in the Town of Union, Broome County. Following surgeries on his arm and ankle which failed to resolve his condition, plaintiff commenced this personal injury action to recover for his injuries. Prior to trial, defendants made a motion in limine to preclude plaintiff from introducing evidence of subsequent accidents at the same location. Supreme Court denied the motion, permitting the evidence at trial and a jury returned a verdict in favor of plaintiff and awarded damages in the following amounts: $60,000 for past pain and suffering, $100,000 for future pain and suffering, $61,000 for past loss of earnings, $485,000 for future loss of earnings, $30,000 for past medical expenses, and $25,000 for future medical expenses, for a total of $761,000. Following an unsuccessful motion to set aside the verdict as excessive, judgment was entered. Defendants now appeal.

We turn first to defendants' argument that Supreme Court erroneously permitted plaintiff to introduce evidence of subsequent similar accidents. "Evidence of a subsequent accident occurring under conditions similar to those existing at the time of the accident complained of is admissible and of probative value on the issue of whether a dangerous condition existed, but cannot charge the defendant with notice of such a condition" (*Galieta v Young Men's Christian Assn. of City of Schenectady*, 32 AD2d 711, 712 [1969] [citations omitted]; *see Dudley v County of Saratoga*, 145 AD2d 689, 690 [1988], *lv denied* 73 NY2d 710 [1989]). Here, plaintiff did not allege that he tripped over a deformity in the tile or slipped on a wet floor, but instead premised his claim on the allegation that the tiles are inherently slippery and, thus, inappropriate for use at a store entrance. The evidence of nine other individuals who slipped and fell in the same location under the same, clean dry conditions was thus relevant to the issue of whether the type of tile used by defendants created a dangerous condition. In addition, Supreme Court did not err in permitting three of those individuals to testify, appropriately limiting the testimony to establish that they fell and the condition of the floor at the time

they fell. The court specifically instructed that the reports and testimony were admissible solely for the limited purpose of establishing whether a dangerous condition existed.

Defendants' assertion that proof of subsequent accidents is only admissible in design defect cases is inaccurate. Although design defect cases present a classic situation where both prior and subsequent accidents are potentially relevant to establish that a dangerous condition existed, it is possible, as here, for a plaintiff to allege that a defendant used a product in such a manner as to create a permanent, or inherent, dangerous condition, without alleging any defect in the product itself. Here, through the use of expert testimony, plaintiff established that the product—the tile—was not defective, but was being negligently misused because it was an inappropriate choice of tile for the entrance to a store.[1] Under such circumstances, records of subsequent accidents are relevant to establish whether the condition created by defendants was unreasonably unsafe (*see Galieta v Young Men's Christian Assn. of City of Schenectady, supra* at 712; *see also Hardy v Tops Mkts.*, 231 AD2d 879, 880 [1996]; *Klatz v Armor El. Co.*, 93 AD2d 633, 638-639 [1983]; *cf. Yoon v F.W. Woolworth Co.*, 202 AD2d 575, 576 [1994] [where claim premised on negligent installation, maintenance and operation of elevator but no design defect was alleged, evidence of prior accidents occurring at different sites precluded]; *Kolody v Supermarkets Gen. Corp.*, 163 AD2d 276, 277 [1990] [alleged dangerous condition—smashed strawberry on the floor—was not an inherent defect]).

Turning to the issue of damages, we find adequate support for the jury's award of $61,000 for past loss of earnings in that it does not "deviate[ ] materially from what would be reasonable compensation" (CPLR 5501 [c]). An award for lost earnings is an objective assessment which "plaintiff bears the burden of proving . . . [and] which must be established with reasonable certainty" (*Tassone v Mid-Valley Oil Co.*, 5 AD3d 931, 932 [2004], *lv denied* 3 NY3d 608 [2004]; *see Jones v Davis*, 307

---

1. As defendants never moved for judgment as a matter of law based on the rule of law that " 'a cause of action for negligence against a building owner cannot be based upon allegations that a floor is slippery because of its smoothness or polish in the absence of proof that some foreign substance existed on the floor or wax was negligently applied' " (*Pechtel v Gould*, 9 AD3d 653, 654 [2004], quoting *Keller v 800 N. Pearl St. Assoc.*, 277 AD2d 775, 776 [2000]), we do not address the issue of whether plaintiff's expert proof constituted sufficient evidence of a "deviation from relevant industry standards" to warrant an exception to that rule (*Portanova v Trump Taj Mahal Assoc.*, 270 AD2d 757, 758 [2000], *lv denied* 95 NY2d 765 [2000]; *see Murphy v Conner*, 84 NY2d 969, 971-972 [1994]).

AD2d 494, 497 [2003], *lv dismissed* 1 NY3d 566 [2003]). Here, although approximately six years elapsed between plaintiff's fall in December 2000 and the trial which commenced in May 2006, plaintiff continued to work full time (48 hours per week) until he underwent surgery in September 2003, a cubital tunnel release intended to alleviate the pain in his right arm and wrist. Plaintiff had a second surgery in November 2004 for repair of the tendon in his left ankle. Following the surgeries, plaintiff returned to work, but at a reduced average of 25 hours per week. Thus, we need not speculate as to his earning capacity in the past or, contrary to plaintiff's contentions, factor in a rate of growth for plaintiff's business, because we have evidence of actual hourly rates charged by plaintiff for the years in question. Indeed, plaintiff's lost earnings in 2003, 2004, 2005 and 2006 can be reasonably calculated by utilizing his hourly rate for that year[2] and multiplying it by the hours of lost work (i.e., the hours plaintiff worked in a year prior to his surgery, or 2,400 [48 hours per week × 50 weeks] less the hours actually worked in that year). When added together, we calculate a total lost wage amount which is sufficiently close to the jury's award to support the conclusion that the award is not unreasonable.[3]

Likewise, we find support in the record to substantiate the jury's award for future lost earnings. Significantly, in calculating an award for future lost earnings, "[r]ecovery is not limited

---

**2.** Plaintiff's hourly rate is calculated by dividing his actual earnings for that year (as reflected on his income tax return) by hours actually worked that year.

**3.** This calculation is based on the following data, which has support in the record. In 2003, plaintiff missed 337 hours of work and thus worked a total of 2,063 hours (2,400 hours less 337 hours). His gross income for 2003 was $30,043, resulting in an hourly rate for 2003 of $14.56 ($30,043/2,063) and total lost earnings for 2003 of $4,906.72 (337 × $14.56).

In 2004, plaintiff missed 1,063 hours of work and thus worked a total of 1,337 hours. He earned $21,828, resulting in an hourly rate for 2003 of $16.33 ($21,828/1,337) and total lost earnings for 2004 of $17,358.79 (1,063 × $16.33).

In 2005, plaintiff missed 1,367 hours of work and thus worked a total of 1,033 hours. He earned $19,230, resulting in an hourly rate for 2005 of $18.62 ($19,230/1,033) and total lost earnings for 2005 of $25,453.54 (1,367 × $18.62).

In 2006, plaintiff missed 411 hours of work. Income tax returns being yet unavailable at the time of the 2006 trial, we use plaintiff's most recent hourly rate (from 2005), resulting in total lost earnings in 2006 of $7,652.82 (411 × $18.62).

Finally, plaintiff offered proof that he missed 114 hours of work between 2000 and 2002 for doctors appointments, resulting in an additional loss of $1,588.02 ($13.93 average income [$33,432 average income from 2000 to 2002/ 2400 hours of work per year] × 114). Thus, we find support for lost earnings between 2000 and 2006 of $56,959.89 ($4,906.72 + $17,358.79 + $25,453.54 + $7,652.82 + $1,588.02).

to actual earnings before the accident and a plaintiff may introduce expert testimony assessing damages based upon future probabilities" (*Tassone v Mid-Valley Oil Co., supra* at 932; *see Kirschhoffer v Van Dyke*, 173 AD2d 7, 10 [1991]). Here, the evidence indicated that following his surgery, plaintiff was able to work 25 hours per week, as opposed to the 48-hour work week he was able to complete prior to the surgery, resulting in a loss of 1,150 hours per year (23 hours [48 hours – 25 hours] × 50 working weeks per year). While defendants assert that the future earnings award should be calculated using plaintiff's hourly pay rate at the time of the 2000 accident, here it is reasonable to apply plaintiff's most recent—and highest—hourly rate in calculating his lost future wages (*see Walsh v State of New York*, 232 AD2d 939, 941 [1996]). When plaintiff's hourly rate for 2005 ($18.62) is multiplied by the number of missed hours per year (1,150) and again by plaintiff's stipulated work life expectancy of 23 years, the number exceeds the $485,000 awarded by the jury. Accordingly, we find no basis upon which to reduce that award.

We are also unpersuaded by defendants' argument that the jury's $100,000 for future pain and suffering materially deviates from reasonable compensation. An award for pain and suffering is inherently a subjective inquiry, not subject to precise quantification, and generally presents a question of fact for the jury (*see Acton v Nalley*, 38 AD3d 973, 976 [2007]; *Osiecki v Olympic Regional Dev. Auth.*, 256 AD2d 998, 1999-1000 [1998]). At trial, plaintiff testified that even after his surgeries, he continued to experience numbness in his right hand, radiating pain in his arm and back, and weakness and twitching in his arm. He explained that his hand shakes, making it difficult for him to hold scissors or a blow dryer at work. He also testified that he has pain in his ankle if he walks more than two blocks or stands for an extended period of time. Given these limitations, plaintiff testified that he had to reduce his work schedule and to curb certain activities, such as yard work, swimming, biking, exercise, playing with his daughter, cooking and using a computer. Plaintiff's claimed limitations were corroborated by the testimony of his orthopedic surgeon, who prescribed a limited work schedule and opined that the condition of plaintiff's arm will not improve. In light of this evidence, the deference due "both to a jury's assessment of personal injury damages and to the trial court's decision on a motion to set aside the jury's verdict" (*Felitti v Daughriety*, 12 AD3d 909, 910 [2004]), and our evaluation of similar cases (*see Starr v Cambridge Green Homeowners Assn.*, 300 AD2d 779, 781 [2002]; *Marshall v Lomedico*, 292 AD2d 669, 671 [2002]; *Skellham v Hendricks*,

270 AD2d 619, 621 [2000]; *Santalucia v County of Broome*, 228 AD2d 895, 897-898 [1996]), we will not disturb the jury's award for future pain and suffering.

On the other hand, we find merit in defendants' argument that the $25,000 award for future medical expenses should be set aside. "It is well settled that an award for future medical expenses may not be based upon mere speculation" (*Faas v State of New York*, 249 AD2d 731, 732 [1998]; *see Cramer v Kuhns*, 213 AD2d 131, 139 [1995], *lv dismissed* 87 NY2d 860 [1995]); thus, to the extent a jury's award for future medical expenses exceeds the evidence of such expenses submitted at trial, it cannot be sustained (*see Hotaling v CSX Transp.*, 5 AD3d 964, 970 [2004]). Although plaintiff asserts that another surgery on his arm is likely, the testimony of his orthopedic surgeon establishes that, although surgery had been discussed, plaintiff was not interested in another surgery and, in any event, the surgeon was not convinced that a third surgery would be of any help to plaintiff. Plaintiff also testified that he is continuing to seek treatment for back pain related to the accident, but provided no evidence of the scope or necessity of such treatment. Inasmuch as the record is devoid of any competent proof of necessary, anticipated medical costs, plaintiff is not entitled to an award for future medical expenses (*see Cardella v Henke Mach.*, 283 AD2d 894, 900 [2001]; *see also Hotaling v CSX Transp., supra* at 970).

We have considered defendants' remaining contentions and find that they were not properly preserved for appellate review or are without merit.

Peters, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order and judgment are modified, on the facts, without costs, by reversing so much thereof as awarded plaintiff damages for future medical expenses; vacate said award; and, as so modified, affirmed.