(December 4, 2014)

◼ Evelyn Rivera, as Administratrix of the Estate of Wilbur Rodriguez, Deceased, Appellant-Respondent, v Montefiore Medical Center, Respondent-Appellant. [998 NYS2d 321]—

Order, Supreme Court, Bronx County (Sharon A.M. Aarons, J.), entered on or about October 24, 2012, which, to the extent appealed from as limited by the briefs, granted defendant's motion to reduce the jury's award for future economic loss attributable to household services by reducing the award from

$680,000 to $340,000, and denied plaintiff's cross motion to strike the testimony of defendant's expert concerning the cause of the decedent's death and to set aside the award of $0 for conscious pain and suffering, affirmed, without costs.

This action against defendant, Montefiore Medical Center, is based on the death of plaintiff's 44-year-old son, Wilbur Rodriguez, in defendant's hospital. He had arrived at its emergency room with respiratory difficulty on January 24, 2009 at 11:45 a.m. and had been admitted to the hospital that night at about 11:00 p.m. with a suspected diagnosis of pneumonia, and he died on January 25, 2009 between 4:00 and 4:40 a.m.

Following trial, the jury returned a verdict in plaintiff's favor, finding the hospital liable for failing to place the decedent in a ward where his vital signs could be continuously monitored, and awarding plaintiff $40,000 for past economic loss and $680,000 for future economic loss over 17 years, and $0 for the decedent's conscious pain and suffering.

Both parties moved to set aside the verdict. Supreme Court denied plaintiff's motion to strike from the record all testimony that the decedent's death was caused by a sudden cardiac event and set aside the award of $0 for the decedent's pain and suffering, or for a new trial on the issue of the decedent's pain and suffering. The court granted in part defendant's motion to set aside the award by reducing the jury award for loss of future household services from $680,000 to $340,000. Both sides appeal from this order. We affirm.

We reject plaintiff's challenge to the aspect of the order that declined to strike the testimony of defendant's expert, Dr. Marc Silberman, in which he asserted that the cause of the decedent's death was a sudden, unexpected cardiac arrhythmia. Plaintiff's in limine application during trial to preclude Dr. Silberman's testimony was properly denied as untimely. Plaintiff's argument at trial for precluding Dr. Silberman's testimony was based on the lack of specificity of defendant's CPLR 3101 (d) statement. The statement recited, with regard to the causation of the decedent's death, that defendant's expert would "testify as to the possible causes of the decedent's injuries and contributing factors . . . [and] on the issue of proximate causation"; also included in its formulaic recitation was the assertion that "the grounds for the expert's opinion will be said expert's knowledge and experience . . . and [the] trial testimony."

CPLR 3101 (d) (1) requires expert disclosure, "in reasonable detail," of "the substance of the facts and opinions on which each expert is expected to testify," in order to provide the plaintiff with the defendant's theories of the case in advance of

trial (*see Chapman v State of New York*, 189 AD2d 1075 [3d Dept 1993]). Here, upon receipt of this 3101 (d) statement, the only objection that plaintiff voiced was that the expert's qualifications failed to include the dates of his residency, which deficiency defendant then cured. Plaintiff neither rejected the document nor made any objection to the lack of specificity regarding the cause of death.

Having failed to timely object to the lack of specificity in defendant's expert disclosure statement regarding the cause of the decedent's death, plaintiff was not justified in assuming that the defense expert's testimony would comport with the conclusion reached by the autopsy report, and plaintiff cannot now be heard to complain that defendant's expert improperly espoused some other theory of causation for which there was support in the evidence.

Plaintiff now argues that the testimony that the decedent's death was caused by a sudden, unexpected cardiac event should be stricken because it came as a surprise. However, after plaintiff's own experts acknowledged on cross-examination that such a sudden cardiac event was a possibility based on the decedent's medical history and condition, defendant's expert appropriately elaborated on that theory of causation, and there is no valid basis on which to strike either side's experts' testimony as to the decedent's death from a sudden cardiac event.

The decedent's emergency room attending physician, Dr. Mukherji, testified that based on his review of the medical record, he believed the decedent died of a cardiac arrest that was not preceded by respiratory failure, since the decedent's vital signs would have progressively worsened throughout the night had he died of respiratory failure. And, while plaintiff's internal medicine and cardiology expert, Dr. Mark Schiffer, offered the opinion that the decedent's death from pneumonia was proceeded by 5 to 10 minutes of a painful struggle to breathe, he acknowledged on cross-examination that, particularly in view of the left ventricular hypertrophy found at autopsy, there was a possibility that the decedent's death occurred as a result of a sudden and unexpected cardiac event.

Not only did Dr. Silberman's properly admitted testimony comport with plaintiff's experts' testimony on cross-examination, it comported with evidence showing that the decedent was not in any respiratory distress the last time he was seen before the 40-minute window of his death; that he had a call button, but never used it, suggesting he died suddenly; and that he had a heart abnormality and other ailments that made him more susceptible to sudden cardiac arrest. All the

foregoing sufficiently supports the jury's rejection of plaintiff's pain and suffering claim.

We also affirm the aspect of the trial court's order reducing the jury's award for future household services from $680,000 to $340,000. Plaintiff's economic expert testified that the value of the decedent's past household service to his mother from January 2009 to the date of the verdict was $39,052 and that the future value of his household service was $247,150, considering her life expectancy of 17 years. The jury's award of $680,000 for future economic loss vastly exceeded the evidence regarding that loss. However, while pecuniary damages must be proven with reasonable certainty, and may not be based on speculation or guesswork, they need not match the expert's assessment exactly where, as here, the expert's valuation is based on a statistical average rather than an exact calculation of services lost (*see Baker v Sportservice Corp.*, 175 AD2d 654 [4th Dept 1991], *lv denied* 78 NY2d 860 [1991]; *James v Eber Bros. Wine & Liq. Corp.*, 153 AD2d 329, 334 [4th Dept 1990], *lv denied* 75 NY2d 711 [1990]). Accordingly, the trial court's reduction of that award to $340,000 was an appropriate assessment.

Finally, plaintiff challenges on appeal a ruling by the trial court, not raised or discussed in the context of the post-verdict motion, that precluded plaintiff's economist from including in his calculations of lost income plaintiff's testimony that the decedent had given her $300 every two weeks, because of the absence of any corroborating documentary evidence. However, the issue is not properly before us on this appeal.

The problem is not one of preservation; we agree that the issue was preserved by the objection made at trial. Rather, that trial ruling is not brought up for review on this appeal, which is solely from the order on the motion to set aside the verdict. Unlike an appeal from a judgment, which brings up for review any ruling to which the appellant objected and any non-final order adverse to the appellant (CPLR 5501 [a] [1], [3]), "[a]n appeal from an order usually results in the review of only the narrow point involved on the motion that resulted in the order" (David D. Siegel, Practice Commentaries, CPLR C5501:1). Concur—Tom, Friedman, Andrias and Saxe, JJ.

Gonzalez, P.J., dissents in a memorandum as follows: I would find the court's denial of plaintiff's motion to preclude defendant's expert from testifying as to a new hypothesis first introduced mid-trial—that decedent had a sudden, lethal cardiac event—reversible error, and I would remand for a new trial on pain and suffering.

The decedent was being treated by defendant hospital for bi-

lateral bronchopneumonia. As of mid-trial, both parties' actions and submissions were consistent with the medical examiner's autopsy report finding that the decedent died of that pneumonia, a death necessarily accompanied by pain and suffering attendant to the patient's eventual suffocation.

A few days into the trial, however, Dr. Mukherji, one of the emergency room doctors who triaged the decedent and treated his bronchopneumonia for approximately 12 hours (while the patient was on a continuous heart monitor), testified on cross-examination that the 44-year-old decedent likely had a lethal heart attack in the middle of the night, after having been transferred from the emergency room to a general medicine floor.

Meanwhile, the continuous telemetry monitoring that took place throughout the 12 hours the decedent spent under Dr. Mukherji's care showed no evidence of any arrhythmia. This doctor was a fact witness; he was not called as an expert. Notably, at his deposition, two months before trial, Dr. Mukherji testified that he could not give an opinion as to how the patient died.

Having been alerted to the new theory by Dr. Mukherji's trial testimony, plaintiff moved to preclude Dr. Silberman, defendant's expert, from opining as to the cause of decedent's death. I disagree with the majority that this objection was untimely. There was no basis for this specific objection to have been raised in response to the CPLR 3101 (d) exchange, since no one had hypothesized that the decedent died of a heart attack.

Plaintiff could not have anticipated this entirely new theory as to the cause of the decedent's death before hearing Dr. Mukherji's testimony, and plaintiff was certainly prejudiced by defendant's expert testimony, as evidenced by the jury verdict of $0 for pain and suffering. In my view, disallowing a motion to limit expert testimony by excluding a new theory revealed for the first time at trial would eviscerate the procedural protection that CPLR 3101 (d) was drafted to create. Accordingly, I would vacate the pain and suffering award and remand the matter for a trial on that issue (*Green v William Penn Life Ins. Co. of N.Y.*, 74 AD3d 570, 575 [1st Dept 2010]; *Lissak v Cerabona*, 10 AD3d 308 [1st Dept 2004]).

Under our interest of justice jurisdiction, I would also find that the court erred in precluding plaintiff's economist from testifying as to projected lost earnings. Plaintiff was entitled to recover "for the pecuniary injuries resulting from the decedent's death" (EPTL 5-4.3 [a]), the calculation of which rests within the jury's province (*see Parilis v Feinstein*, 49 NY2d 984 [1980]).

In addition to the losses attributable to household services provided to plaintiff by the decedent, plaintiff's unrefuted testimony concerning the close relationship she had with her son and his biweekly financial contributions to her, which she claims would likely have continued, are subject to consideration by a jury in determining her future economic losses, even in the absence of supporting documentation (*Zelizo v Ullah*, 2 AD3d 273 [1st Dept 2003]; *Abruzzo v City of New York*, 233 AD2d 278 [2d Dept 1996]).