Johns v Crown Equip. Corp. (2025 NY Slip Op 05856)

Johns v Crown Equip. Corp.

2025 NY Slip Op 05856

Decided on October 23, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 23, 2025

CV-24-0810
[*1]Anthony Johns, Appellant,
v
Crown Equipment Corporation, Respondent.

Calendar Date:September 11, 2025

Before:Clark, J.P., Pritzker, McShan and Powers, JJ.

McCartney Stucky LLC, Rye (Austin T. Osborn of counsel), for appellant.
Bond, Schoeneck & King, PLLC, Syracuse (Thomas J. Cullen Jr. of Nelson Mullins Riley & Scarborough, LLP, Nashville, Tennessee, admitted pro hac vice, of counsel), for respondent.

Powers, J.
Appeal from a judgment of the Supreme Court (Eugene Faughnan, J.), entered March 28, 2024 in Broome County, upon a verdict rendered in favor of defendant.
On December 31, 2018, plaintiff was operating a stand-up forklift, designed, manufactured and distributed into the stream of commerce by defendant, when he was unable to successfully initiate either of the two braking mechanisms on the machine and collided into a support pole in the warehouse where he was working. During this accident, his left leg moved outside of the operator compartment of the machine and was crushed between the machine and the support pole. Plaintiff suffered significant injuries to his lower left leg, ultimately resulting in an amputation. Plaintiff commenced this action in July 2019, alleging that the forklift was defectively designed, and that defendant knew or should have known of the dangers presented by utilizing the forklift for its intended purpose.
Following joinder of issue and discovery, both plaintiff and defendant filed motions in limine seeking to preclude certain expert testimony to be proffered by the other. Supreme Court held oral argument on these motions and, thereafter, determined that defendant's expert M. Laurentius Marais, a statistician, would be permitted to testify at trial, and the court reserved judgment on the admissible scope of the testimony of plaintiff's experts Barry Root, a physical medicine and rehabilitation physician, and Paul Thomas, an economist, until a foundation was laid at trial. After Root testified in full at trial, the court found that aspects of his testimony were too speculative and, as a result, limited the permissible scope of Thomas' testimony so as to not permit testimony related to the costs of certain treatments that Root had testified plaintiff may need in the future. At the close of trial, the jury determined that the forklift was not defectively designed, and that defendant did not breach its warranty. Accordingly, the jury did not reach the issue of damages, and a judgment was entered in favor of defendant. Plaintiff appeals.
Initially, we agree with plaintiff's contention that Supreme Court abused its discretion in permitting Marais to testify as to a comparative analysis that utilized the broad category of accidents involving "industrial truck and tractor operators." Based upon this error, a new trial is warranted.[FN1] [FN2]
"[D]efects in the opinions of . . . experts or the foundation on which those opinions are based should go to the weight to be accorded that evidence by the trier of fact, not to its admissibility in the first instance" (Sadek v Wesley, 27 NY3d 982, 984 [2016]; see Benguigui v Racer, 198 AD3d 608, 609 [2d Dept 2021]). Nevertheless, it must always first be determined, "as a preliminary matter of law, whether an adequate foundation for the admissibility of th[e] particular evidence has been established" (People v Wesley, 83 NY2d 417, 429 [1994]; see Johnson v Guthrie Med. Group, P.C., 125 AD3d 1445, [*2]1447 [4th Dept 2015]; Jackson v Nutmeg Tech., Inc., 43 AD3d 599, 601, 602 [3d Dept 2007]). In this regard, "proof of a prior accident, whether offered as proof of the existence of a dangerous condition or as proof of notice thereof, is admissible only upon a showing that the relevant conditions of the subject accident and the previous one were substantially the same" (Hyde v County of Rensselaer, 51 NY2d 927, 929 [1980]; accord Nyambuu v Whole Foods Mkt. Group, Inc., 191 AD3d 580, 581 [1st Dept 2021]; O'Buckley v County of Chemung, 149 AD3d 1232, 1234 [3d Dept 2017]).
Marais testified that he utilized two different databases to compute the statistical likelihood of accidents involving defendant's forklifts as compared to those suffered by industrial truck and tractor operators more widely. First, Marais utilized a database of accidents created and maintained by defendant from which he determined that the rate of injury for "all kinds of injuries to operators of [defendant's forklifts]" was 0.48 per every 100,000 eight-hour shifts. Notably, this database was entirely reliant upon injuries being voluntarily reported to defendant. Second, Marais utilized a federally collected database which compiled accidents involving industrial truck and tractor operators to determine that the rate of injury for this category of employees is approximately 1.3 injuries per every 100,000 eight-hour shifts.
Because the underlying data was specific to accidents involving defendant's forklifts and plaintiff's expert also relied upon and testified to that database, we find that Supreme Court properly allowed Marais to testify as to the rate of injuries sustained in the operation of defendant's forklifts as computed from defendant's database. However, the court abused its discretion in permitting testimony related to the utilization of the wider category of accidents involving "industrial truck and tractor operators," as defendant failed to establish that the underlying conditions of those accidents were substantially similar to the facts presented here (see Daniels v New York City Tr. Auth., 35 NY3d 938, 939 [2020]; O'Buckley v County of Chemung, 149 AD3d at 1235; compare Martin v Our Lady of Wisdom Regional Sch., 151 AD3d 838, 839 [2d Dept 2017]; Barnhard v Cybex Intl., Inc., 89 AD3d 1554, 1556 [4th Dept 2011]). The core of Marais' testimony was that the rate of injuries involving defendant's forklifts was significantly lower than other industrial-related injuries. Even crediting that the federal database Marais utilized to make this comparison included forklift injuries, it also included a variety of other dissimilar industrial vehicles. In addition, there was no way to determine how many of the reported injuries therein were the result of forklift operations or, equally as important, the underlying conditions precipitating those accidents. Defendant's assertion that this testimony was necessary to rebut plaintiff's expert is flawed — rebuttal does not give a defendant [*3]an open platform to present proof that would otherwise lack a sufficient foundation. In sum, Marais opined about the safety of defendant's forklift — i.e., "the central issue to be resolved at trial" — and, therefore, the error in allowing such testimony cannot be deemed harmless and a new trial is required (244 Linwood One, LLC v Tio Deli Grocery Corp., 214 AD3d 617, 618 [2d Dept 2023]; see Williams v Ridge View Manor, LLC, 188 AD3d 1729, 1730 [4th Dept 2020]; Billok v Union Carbide Corp., 170 AD3d 1388, 1390 [3d Dept 2019]).
As remittal is required, despite the jury not reaching the issue of damages, we address plaintiff's further argument that Supreme Court abused its discretion in limiting Thomas' testimony regarding the associated costs of certain aspects of the life care plan that had been testified to by Root (compare Solomon v Meyer, 149 AD3d 1320, 1321 [3d Dept 2017]; Juric v Bergstraesser, 133 AD3d 951, 954 [3d Dept 2015]).
"Awards of damages for . . . future medical expenses must be supported by competent evidence which establishes the need for, and the cost of, medical care" (Wynter v Transdev Servs., Inc., 207 AD3d 785, 787 [2d Dept 2022] [internal quotation marks and citations omitted]) and, therefore, "may not be based upon mere speculation" (Faas v State of New York, 249 AD2d 731, 732 [3d Dept 1998]; accord Petrilli v Federated Dept. Stores, Inc., 40 AD3d 1339, 1344 [3d Dept 2007]). Root indicated that he had authored a life care plan for plaintiff based upon his examination of plaintiff, review of the medical records and his own knowledge developed over his decades-long career in medicine. Root affirmed with certainty that, among other things, "consequential overuse syndromes are inevitable."[FN3] In that regard, his opinions were based upon competent medical knowledge and not, as defendant argued, undue speculation. Accordingly, while "[e]vidence submitted at trial that the plaintiff will incur medical expenses when and if future conditions develop that require treatment is speculative, and does not support an award of damages for future medical expenses" (Pilgrim v Wilson Flat, Inc., 110 AD3d 973, 974 [2d Dept 2013]; accord Masmalaj v New York City Economic Dev. Corp., 197 AD3d 1294, 1296-1297 [2d Dept 2021]), Root stated a basis for his opinion and indicated with a degree of medical certainty that plaintiff would require future treatment and described those treatments that would likely be necessary (see Wynter v Transdev Servs., Inc., 207 AD3d at 788; compare Kun Sik Kim v State St. Hospitality, LLC, 121 AD3d 760, 762 [2d Dept 2014]; Petrilli v Federated Dept. Stores, Inc., 40 AD3d at 1344; Stylianou v Calabrese, 297 AD2d 798, 799 [2d Dept 2002]; cf. Tarpley v New York City Tr. Auth., 177 AD3d 929, 933 [2d Dept 2019]; Leto v Amrex Chem. Co., Inc., 85 AD3d 1509, 1512 [3d Dept 2011]; Mohamed v New York City Tr. Auth., 80 AD3d 677, 679 [2d Dept 2011]).
Considering this proof, Supreme Court abused its discretion by striking Root's testimony [*4]and then limiting certain aspects of Thomas' testimony regarding plaintiff's future medical expenses because the testimony was supported by "competent proof of necessary, anticipated medical costs through [a qualified physician] and [an] expert economist" (Morrison v South Union RD HC, LLC, 225 AD3d 1209, 1212-1213 [4th Dept 2024] [internal quotation marks and citations omitted], lv dismissed 42 NY3d 1032 [2024]; see Andino v Mills, 135 AD3d 407, 408 [1st Dept 2016], appeal dismissed 27 NY3d 1180 [2016], mod 31 NY3d 553 [2018]; Barnhard v Cybex Intl., Inc., 89 AD3d at 1556; compare Beadleston v American Tissue Corp., 41 AD3d 1074, 1077 [3d Dept 2007]). Instead, to rebut this admissible proof, defendant is able to present the jury with competing expert testimony that called into question the accuracy of Root's opinions concerning plaintiff's projected medical care needs and the accuracy of Thomas' opinions concerning the costs of those projected needs. Similarly, to the extent that defendant takes issue with the life care plan indicating that "plaintiff would require greater treatment . . . than he had previously received, . . . such testimony goes to the weight of the expert's opinion rather than its admissibility" (Tornatore v Cohen, 162 AD3d 1503, 1506 [4th Dept 2018]; compare Lopez v City of New York, 192 AD3d 634, 640-641 [1st Dept 2021]).
To the extent not specifically addressed, plaintiff's remaining contentions have either been rendered academic or have been reviewed and found to be without merit.
Clark, J.P., Pritzker and McShan, JJ., concur.
Ordered that the judgment is reversed, on the law, with costs, and matter remitted to the Supreme Court for a new trial.

Footnotes

Footnote 1: To the extent plaintiff makes mention of the Frye test, plaintiff's arguments do not allege that the testimony at issue was based upon a novel scientific procedure and, therefore, Frye is inapplicable here (see State of New York v 158th St. & Riverside Dr. Hous. Co., Inc., 100 AD3d 1293, 1297-1298 [3d Dept 2012], lv denied 20 NY3d 858 [2013]; Alexander v Dunlop Tire Corp., 81 AD3d 1134, 1135 [3d Dept 2011]; see e.g. Johnson v Guthrie Med. Group, P.C., 125 AD3d 1445, 1447 [4th Dept 2015]).
Footnote 2: Defendant's assertion that this contention is unpreserved for review by this Court is without merit inasmuch as plaintiff's motion in limine sought to preclude Marais' testimony in full, and he was "not required to repeat the same arguments in order to preserve [his] contentions" for appellate review (Matter of Carmela H. [Danielle F.], 185 AD3d 1460, 1461 [4th Dept 2020], lv denied 35 NY3d 915 [2020]; cf. People v Woody, 214 AD3d 157, 166-167 [1st Dept 2023]).

Footnote 3: Root described in the life care plan that "[a]mbulation with a prosthesis is energy-demanding, requiring overuse of the skeletal support and musculature." He affirmed that plaintiff, as a result of the amputation, will experience "consequential right knee pain, instability, ACL insufficiency with pain exacerbated by prosthetic use," as well as an "[e]levated risk for overuse syndromes at [the] wrists, shoulders, [and] right leg consequential to wheelchair, crutch and cane use." Incidental to this, plaintiff's spine, right knee, hips, wrists and shoulders must be monitored throughout his life and treatment to resulting conditions will likely be necessary.