Shelley B. WINGAD, Plaintiff-Respondent,

v.

JOHN DEERE & CO., doing business under the assumed
name of Deere & Company, Defendant-Appellant.†

Court of Appeals

*No. 94–0056. Submitted on briefs August 8, 1994.—Decided
September 13, 1994.*

(Also reported in 523 N.W.2d 274.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Webster A. Hart* and *Stephanie L. Finn* of *Herricl, Hart, Duchemin, Spaeth, Sullivan & Schumacher, S.C.* of Eau Claire.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joel W. Brodd* and *Paul R. Dahlberg* of *Doar, Drill & Skow, S.C.* of Baldwin.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.    John Deere & Co., doing business under the assumed name of Deere & Company (John Deere) appeals a judgment entered on a jury verdict in favor of Shelley Wingad. The jury found John Deere causally negligent in a work-related accident that injured Wingad. John Deere contends that the trial court erred by adopting Wingad's modifications to the standard jury instructions and a nonpattern instruction because the changes disrupted the proper balance that must be maintained in jury instructions. It also submits that one of the jury instructions was not supported by the evidence admitted at trial. Also, John Deere contends that the trial court erred by failing to

permit expert testimony regarding seat belt use and by admitting learned treatises testimony. Last, John Deere argues that the trial court erred by awarding damages for future loss of earning capacity because expert testimony on inflation and reduction for present value was not introduced.

We conclude that the trial court exercised proper discretion in the rulings on the jury instructions, as well as not admitting the expert testimony on the seat belt use. Furthermore, the learned treatises objections were not properly preserved for appeal. Also, we conclude that the defendant has the burden of proving present value reduction, which John Deere failed to do. Therefore, we affirm the trial court's judgment.

## BACKGROUND

While an employee of Tjader Construction, Wingad alleged that he was injured while operating a Model 855 Compact Utility Tractor manufactured by John Deere. Wingad asserted the tractor violently tipped, causing him severe and permanent damage and that John Deere is liable as manufacturer and designer of the tractor. At the jury instruction conference, John Deere objected to modifications made to various instructions by Wingad. The trial court overruled or partially overruled these objections. The trial court also ruled that expert testimony was not necessary regarding Wingad's failure to wear a seat belt. During trial, portions of learned treatises were read into evidence by Wingad's counsel as well.

After a three-day jury trial, a verdict in favor of Wingad awarded him $652,968.54 in damages, including costs and interest. Part of this sum included $350,000, which was the future loss of earning capacity. There was no economic expert testimony by either

defendant or plaintiff as to inflation or present value in relation to the loss of earning capacity. John Deere's motions after verdict were denied and judgment was entered in December 1993.

## EXPERT TESTIMONY ON PRESENT VALUE AND INFLATION

John Deere asserts that the trial court erred by awarding damages for future loss of earning capacity in the absence of expert evidence regarding the effects of inflation and reduction for present value. Essentially, it is arguing that the plaintiff, Wingad, had the burden of introducing expert testimony to reduce future damages to present value. We disagree.

At trial, Wingad's rehabilitation witness, Alden Bjorklund, testified to Wingad's expected loss of earning capacity on a yearly basis, which was $12,500. Wingad's expected work life was calculated as twenty-eight years, subtracting his age of thirty-seven from the usual retirement age of sixty-five. Bjorklund multiplied $12,500 by twenty-eight years for the amount of $350,000, which was the loss of earning capacity figure presented to the jury.

After voir dire on the witness' expertise, the court ruled that Bjorklund could not testify to the effects of inflation or the present value of $350,000 because he was not an economic expert and did not have the expertise to determine present value. Nonetheless, Bjorklund was later allowed to offer an opinion that inflation and present value would offset one another, assuming the discount rate and inflation rate were equal. The trial court allowed Bjorklund to continue his calculations and conclude the present value as $350,000, based on his assumption that the discount

rate and inflation rate would be equal and would therefore offset each other.

John Deere questioned Bjorklund on inflation and present value considerations during cross-examination, but he did not testify to these factors because, by his own admission, he was not a qualified economic expert. Although present value and inflation were mentioned by Bjorklund, these factors were never presented or explained by an expert economist. The parties never agreed to a discount rate to be applied when calculating the present value of $350,000, nor was the mathematical formula or tables for calculating present value ever submitted to the jury. At the close of trial, the trial court gave the standard present value and inflation instructions.

██

In general, if a trial court has reviewed the evidence and approved an award for damages, the appellate court is reluctant to interfere. *Herman v. Milwaukee Children's Hosp.*, 121 Wis. 2d 531, 545, 361 N.W.2d 297, 302 (Ct. App. 1984). Nonetheless, the appellate court may independently review the evidence to determine whether it supports the award. *Id.*

In evaluating future damages, juries must determine the present worth of dollars. *See* WIS J I—CIVIL 1796. Present value of future losses is explained in this jury instruction:

> A lump sum of money received today may be worth more than the same sum paid in installments over a period of months or years. This is because a sum received today can be invested and earn money at current interest rates. By making a reduction for the earning power of money, your answer will reflect the present value in dollars of an award of future damages.

This instruction is required in the calculation of loss or lessening of future earning capacity. *See Johnson v. Pearson Agri-Systems, Inc.,* 119 Wis. 2d 766, 776-77, 350 N.W.2d 127, 133 (1984). In calculating present value, future payoffs by the rate of return offered by comparable investment alternatives are discounted. This rate of return is referred to as the discount rate. *See* RICHARD A. BREALEY & STEWART C. MYERS, PRINCIPLES OF CORPORATE FINANCE 12 (4th ed.). Evidence of a discount rate or range of discount rates, whether by stipulation or testimony, is needed in calculating present value.

In Wisconsin, an inflationary analysis is not mandatory in determining loss of earning capacity. The effects of inflation should be taken into account in calculating a reasonable damage figure. *Cords v. Anderson,* 80 Wis. 2d 525, 552, 259 N.W.2d 672, 684 (1977). The proper instruction, WIS J I—CIVIL 1797, states: "In computing the amount of future economic damages, you may take into account economic conditions, present and future, and the effects of inflation." WIS J I—CIVIL 1797 is interpreted as permitting consideration of inflation. *Herman,* 121 Wis. 2d at 553, 361 N.W.2d at 306.

John Deere contends that the loss of future earnings award is not properly supported by the evidence at trial because present value and the effects of inflation were not presented by expert evidence. John Deere purports that because Wingad's expert witness, Bjorklund, was not properly qualified as an economic expert, his testimony was insufficient in supporting the future loss of earnings award. Implicit in this assertion is that it is the plaintiff who has the burden of proving the reduction to present value.

449

It is well-settled law in Wisconsin that the person claiming damages has the burden of proof for future damages. *See* WIS J I—CIVIL 1705. The burden is on the plaintiff to establish damages for loss of future earning capacity to a reasonable certainty. *See Ianni v. Grain Dealers Mut. Ins. Co.,* 42 Wis. 2d 354, 364, 166 N.W.2d 148, 153 (1966) (citing JAMES D. GHIARDI, PERSONAL INJURY DAMAGES IN WISCONSIN (1964)). However, the burden of proof as to the present value calculation as it applies to future earning capacity has not yet been established. Thus, this is a case of first impression in Wisconsin.

There is a split of authority as to this issue in both the federal and state courts. *See, e.g., Gorniak v. National R.R. Passenger Corp.,* 889 F.2d 481, 486 (3rd Cir. 1989) (plaintiff bears the burden of producing evidence for the fact finder to make a reduction of present value to future loss of earnings); *Alma v. Manufacturers Hanover Trust Co.,* 684 F.2d 622, 626 (9th Cir. 1982) (defendant must establish discount rate applied in present value determination); *Cella v. United States,* 825 F. Supp. 1383, 1408 n.3 (N.D. Ind. 1991) (issue of who has burden of proof in establishing present value unsettled question of law, upon which few courts have commented); *see also* 22 AM.JUR.2D *Damages* § 907 (1988), which summarizes the issue: "There is very little direct authority on the question whether the plaintiff or the defendant has the burden of presenting evidence of the proper discount rate and the method of applying it to determine the present value of a future loss."

In a recent Virginia Supreme Court case this issue was addressed. *CSX Trans., Inc. v. Casale,* 441 S.E.2d 212 (Va. 1994). In *Casale,* the plaintiff was injured

while repairing telephone wires. Casale filed an action against CSX, his employer, under the Federal Employer's Liability Act (FELA). The plaintiff presented evidence about his rate of pay at the time of the accident, general wage increases to which he would be entitled, cost of living increases due him in the future and his fringe benefits. However, he presented no present value evidence, maintaining that the burden was on the defense to present such evidence. The trial court in *Casale* gave the jury an instruction similar to Wisconsin's instruction on present value, which in effect instructs the jury that when making an award of loss of future earnings, the plaintiff will have use of this money in a lump sum and therefore the verdict should reflect the present value of such future loss. The jury found in favor of the plaintiff awarding damages of $1.3 million, which the court reduced to $1.17 million after considering the plaintiff's contributory negligence.

The defendant, CSX, appealed from the verdict stating that the damages were excessive. *Id.* at 213. On appeal, CSX contended that the plaintiff failed to offer evidence of present value and that the plaintiff had the burden to do so. *Id.* at 214. The Virginia Supreme Court held that the defendant, seeking the reduction of damages to the present value, had the burden of going forward with the evidence. *Id.* at 216.

The Virginia Supreme Court based its opinion partly on the United States Supreme Court's treatment of the nature of mitigation of damages. *Id.* at 215-16. It relied on *Chesapeake & Ohio Ry. v. Kelly,* 241 U.S. 485, 489 (1916) for the proposition that a person seeking to recover damages must do what a reasonable person would do in the situation to limit the amount of damages. Taking from this, the court then notes that

when mitigation of damages is at issue, the burden is upon the defendant to show the plaintiff's damages should be reduced. *Casale,* 441 S.E.2d at 216. The court points out that reduction to present value for future loss of earnings is not exactly a mitigation of damages issue, but a comparable concept.

We find this analysis persuasive. Generally, it is the plaintiff's burden to establish damages which result from the defendant's tortious acts or breach of contract. However, it is the defendant's burden to establish matters asserted in mitigation or reduction of the amount of plaintiff's damages. *See* AM.JUR.2D *Damages* § 908 (1988). Although the reduction to present value of a claim for future loss of earnings is not a pure mitigation of damages issue, we agree with the Virginia Supreme Court in *Casale* that it is a comparable idea. The introduction of present value evidence, including the discount rate, reduces the plaintiff's award. Logically, it would be in the best interest of the defendant to introduce such evidence because reduction for present value benefits the defendant.

We therefore hold the following procedures should apply. The plaintiff, of course, has the ultimate burden of proof upon the quantum of damages. A plaintiff establishes a prima facie case for recovery of future lost earnings by presenting evidence of, for example, projected wage loss, fringe benefits to be lost in the future and life expectancy. A defendant seeking reduction to present value of a sum awarded for loss of future earnings has the burden of going forward with evidence to enable the fact finder to make a rational decision on the award. The defendant benefits from the trial court's instruction on present value. The reason for such an instruction on present value is obvious. When a jury

verdict is based upon the deprivation of future benefits, it will provide more than reasonable compensation if it is formed by merely totaling the loss of future benefits without taking into account the earning power of the money awarded. It is self-evident that a given sum of money now is worth more than an equivalent sum of money payable in the future. We recognize that the calculation of present value may be a difficult computation for the average juror. Therefore, the trial court may allow the defendant to meet this burden on present value by admitting testimony of expert witnesses, or by receiving in evidence the standard interest and annuity tables in which present values are calculated at various rates of interest and for various periods covering the ordinary life expectancies.

Fairness dictates, however, that a defendant entitled to the present value instruction should have the burden of presenting evidence to reap the benefit of the instruction. On the other hand, we agree with John Deere that the burden of proof was on the plaintiff for the inflationary rate, because the plaintiff benefits from this instruction. However, in its discretion, the trial court must be careful to avoid converting the average accident trial into a graduate seminar on economic forecasting. *See Monessen Southwestern Ry. v. Morgan,* 486 U.S. 330, 341-42 (1988).

Here, the trial court's approval of the damages award was appropriate because there was adequate evidence to support the award. The jury was given the proper jury instructions for present value and inflation. Because John Deere failed to introduce evidence on present value, we reject its arguments that the awarded damages were excessive.

453

## JURY INSTRUCTIONS

John Deere challenges the modifications made to WIS J I—CIVIL 1019, 3242, 3244/46, 3260, 3262 and a nonpattern instruction, plus the trial court's rulings on objections to these jury instructions. John Deere asserts that the trial court erred by allowing these instruction modifications because they disrupted the proper balance that should be maintained when instructing a jury. Furthermore, they assert that WIS J I—CIVIL 1019 was erroneously allowed, due to a lack of evidence supporting the instruction. We disagree with these assertions.

At the outset of our analysis, we address the question whether the objections were properly preserved for appeal. Pursuant to § 805.13(3), STATS., objections to jury instructions are waived if there is a failure to object at trial or if the objection is not stated with specificity or particularity on the record. *Gegan v. Backwinkel,* 141 Wis. 2d 893, 906, 417 N.W.2d 44, 50 (Ct. App. 1987).

Second, when addressing objections to jury instructions, we have a limited scope of review because: "The trial court has wide discretion in instructing a jury, and if its instructions adequately cover the law, there is no erroneous exercise of discretion when the court refuses to give a requested instruction, even if the proposed instruction is correct." *Nelson v. Taff,* 175 Wis. 2d 178, 186, 499 N.W.2d 685, 688 (Ct. App. 1993). We will not disturb a trial court's discretionary decision unless an unreasonable exercise of discretion is clearly shown. *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 470, 326 N.W.2d 727, 732 (1982). In determining whether the trial court erroneously exercised its discre-

tion, we look to the trial court's rationale and reasoning underlying its determination. If the determination is one a reasonable judge would reach and consistent with applicable law, the determination will be affirmed. *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20-21 (1981).

John Deere objects to six instructions given by the trial court. Of these objections, all were properly preserved for appeal, except modifications made to WIS J I—CIVIL 3244 and 3246. John Deere's assertion that these latter instructions destroyed a proper balance was not presented at the instruction conference. At the conference, John Deere objected to the phrasing of the jury instruction in relation to a repetitive duty to warn instruction and the trial court, in response, modified the instruction. The basis of the objection was not the balance argument now made on appeal. Because the basis of the objection on appeal is not the same as at trial, it is not preserved for appellate review.

The remaining jury instructions, which include: (1) custom or usage in the industry, (2) duty to design a safe product, (3) manufacturer's duty to warn and (4) adequate warning, were given satisfactory consideration by the trial court. The trial court based its decisions on the facts of the case, the other jury instructions involved and the relation of the law to the facts. Although the articulation for the rulings and modifications is at times sparse, the trial court considered the reasoning by both sides and made decisions accordingly. Furthermore, WIS J I—CIVIL 1019 was generally supported by testimony of an expert in-house witness for John Deere. These determinations were ones a reasonable judge would make, thus the trial court did not erroneously exercise its discretion.

## SEAT BELT AND LEARNED TREATISES TESTIMONY

John Deere contends that the trial court erred by not permitting expert testimony regarding Wingad's failure to use his seat belt. This contention is without merit. Whether to admit or exclude evidence is addressed to the trial court's discretion, and that determination will not be upset on appeal absent an erroneous exercise of discretion. *State v. Jenkins,* 168 Wis. 2d 175, 186, 483 N.W.2d 262, 265-66 (Ct. App. 1992). A trial court properly exercises its discretion if its decision has "a reasonable basis" and was made "in accordance with accepted legal standards and in accordance with the facts of record." *Id.* (quoting *Lievrouw v. Roth,* 157 Wis. 2d 332, 348, 459 N.W.2d 850, 855 (Ct. App. 1990)).

John Deere's expert was to offer evidence that had Wingad worn a seat belt, he would not have been ejected from the tractor. The trial court ruled that John Deere's expert was not allowed to testify regarding seat belt use because his testimony would not add anything to the case. The trial court articulated its ruling by stating that if the expert had anything to teach the jury that was relevant, he would not exclude the expert's testimony entirely. It is a well-established principle that expert testimony is not used when a matter is within the realm of ordinary experience and lay comprehension. *White v. Leeder,* 149 Wis. 2d 948, 960, 440 N.W.2d 557, 562 (1989). Although it is well-settled law that expert testimony is required to establish a seat belt defense, in cases of simple ejection, such is not the case. *See generally Lukowski v. Dankert,* 184 Wis. 2d 142, 154, 515 N.W.2d 883, 888 (1994) (supreme court

upheld arbitration award on personal injury case where expert testimony was not given on seat belt defense). Thus, the trial court's ruling as to John Deere's expert had a reasonable basis in law and fact and therefore was not an erroneous exercise of discretion. It is important to note that the trial court did not preclude the expert's opinion on subjects proper for expert testimony, but rather the subject of seat belt use.

The trial court also allowed learned treatises evidence, which John Deere asserts was irrelevant and prejudicial. In a pretrial notice, John Deere objected to two learned treatises on grounds of one being undated and the other not being published. The objection to the treatises on the basis of irrelevancy and prejudice was first raised in the motions after verdict. Whether a party has objected to the admissibility of evidence in a manner sufficient to preserve the issue for appeal requires the application of § 901.03(1)(a), STATS. Under § 901.03(1)(a), a party must object or move to strike in a timely manner on the record, specifically stating the grounds of the objection for error to be found. *State v. Hartman*, 145 Wis. 2d 1, 9, 426 N.W.2d 320, 323 (1988). To be considered timely, objections must be made prior to the return of the jury verdict. *Miles v. Ace Van Lines & Movers, Inc.*, 72 Wis. 2d 538, 545, 241 N.W.2d 186, 189 (1976). In *Miles*, the supreme court found that an objection to information in a closing argument was untimely because it was made after the return of the jury verdict. The supreme court held that this objection was untimely and constituted a waiver of the right to object to the argument made. *Id.*

457

A party cannot wait until after receiving an unfavorable verdict, then raise an objection or state different grounds in the motions after verdict. John Deere's objection to the learned treatises on relevancy grounds in the motions after verdict was untimely because it prevented the trial court from reviewing the relevancy of the evidence before it was presented to the jury. Because John Deere objected to the learned treatises on different grounds and did not object or move to strike in a timely manner, its objection to the learned treatises evidence was waived.

*By the Court.*—Judgment affirmed.