**BETTER BUILDING MAINTENANCE OF THE VIRGIN ISLANDS, INC.,**
**Appellant/Defendant**

**v.**

**ANDREA LEE, Appellee/Plaintiff**

S. Ct. Civil No. 2012-0092

Supreme Court of The Virgin Islands

April 15, 2014

741

GEORGE MARSHALL MILLER, ESQ., St. Thomas, USVI, *Attorney for Appellant.*

FRANCIS E. JACKSON, JR., ESQ., Law Offices of Francis E. Jackson, Jr., St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(April 15, 2014)

CABRET, *Associate Justice*. Better Building Maintenance of the Virgin Islands, Inc., appeals a jury verdict awarding Andrea Lee damages for a slip-and-fall incident occurring in the large discount department store where she worked. Better Building argues that this Court must reverse the verdict because the Superior Court erred by allowing Lee to impeach Better Building's witness with inadmissible evidence, admitting testimony on future medical expenses without a proper foundation, and instructing the jury to reduce the future damages award to present value without any evidence to guide this calculation. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of January 7, 2009, Andrea Lee worked the night shift at the K-Mart in Tutu Park Mall on St. Thomas, arriving at the store at 10:00 p.m. During her shift, Lee took a break in the employee cafeteria just after 2:00 a.m. Around 3:00 a.m., while Lee was still in the cafeteria, Andrew Williams — an employee of Better Building, the subcontractor responsible for cleaning K-Mart's floors — swept and mopped the area outside of the employee cafeteria. Lee then left the cafeteria around 3:20 a.m. and slipped on the mopped area, spraining her neck and back. Following the incident, she brought this negligence action against Better Building, seeking recovery for her past and future medical expenses and pain and suffering.

On July 31, 2012, the Superior Court held a two-day jury trial. During trial, Dr. James Nelson, a neurologist who treated Lee after she fell, testified that he had seen Lee forty-four times since her fall and that Lee had also seen an orthopedist and other specialists for her injuries,

745

undergoing physical therapy and an array of medical testing.[1] Dr. Nelson stated that another neurologist, Dr. David Weisher, had assigned Lee an eighteen percent disability rating due to permanent pain she suffered from her fall. Dr. Nelson also testified that Lee's treatment would be ongoing, including visits to the doctor every three months at $200 per visit, periodic testing totaling $4,500 every three to five years, physical therapy twice a month at $200 per session, and prescription medications costing between $100 and $200 per month. Better Building objected to this testimony, arguing that it was "totally speculative," but the court overruled the objection. After Dr. Nelson's testimony, Lee testified to the events on the night of her fall, stating that Williams did not put out warning signs after mopping. At the start of the second day of trial, Lee rested and Better Building moved for a directed verdict, arguing that Lee had failed to establish the elements of negligence and that Better Building had no duty to warn because Lee allegedly admitted to seeing Williams mop the floor before she fell. The court denied the motion.

Better Building subsequently called Williams to testify. Williams stated that he mopped the floor that morning at 2:50 a.m., and testified that he put down yellow warning cones around the area after he finished mopping. On cross-examination, Lee impeached Williams's testimony with his previous convictions for third-degree burglary and possession of stolen property, which the Superior Court allowed over Better Building's objection. Following Williams's testimony — and that of Sergio Ferioli, the owner of Better Building — the defense rested.

While reviewing the proposed jury instructions with the parties, the Superior Court *sua sponte* raised the issue of reducing future medical expenses to present value, noting that there was "no testimony as to how to calculate future expenses and reduce them to present value." Better Building agreed and requested that the court strike the entire future damages instruction, while Lee argued that it should go to the jury. The court reserved judgment on the issue, and despite its concern, instructed

---

[1] We note that the Joint Appendix in this case contains only seven pages of testimony from the two-day trial. It includes only three pages of Dr. Nelson's testimony, two pages of Williams's testimony, and none of Lee's testimony. Supreme Court Rule 24(a) required Better Building to include in the Joint Appendix all "relevant portions of the trial transcripts . . . or other parts of the record referred to in the briefs at such length as may be necessary to preserve context." Consequently, the Court was required to obtain the transcript from the Superior Court directly. *See* V.I.S.CT.R. 11(c).

the jury that it should reduce any award for future medical expenses by subtracting the amount Lee could reasonably expect to earn if she invested a lump sum award. Better Building objected to this instruction at sidebar immediately following the instructions, arguing that without evidence of the expected rate of return on an investment, the jury could only speculate. The court explained that the instruction was necessary to guide the jury's award calculations.

The jury later returned a verdict in Lee's favor, but found her to be thirty-five percent comparatively negligent. The jury awarded her $52,936.21 in past medical expenses, $47,000 in "other past economic los[s]," $8,000 for future medical expenses "[r]educed to present value," and nothing for pain and suffering. On August 13, 2012, the Superior Court entered judgment awarding Lee $70,158.54, reflecting the jury's damages award reduced by Lee's thirty-five percent comparative negligence. Better Building filed a timely notice of appeal on September 11, 2012.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." V.I. CODE ANN. tit. 4, § 32(a). The August 13, 2012 Judgment dealt with all of the issues in the suit, closed the case, and left " 'nothing to do but execute the judgment.' " *Rojas v. Two/Morrow Ideas Enters., Inc.*, 53 V.I. 684, 691 (V.I. 2010) (quoting *V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008)). Accordingly, it was a final order over which this Court may exercise jurisdiction. *Harvey v. Christopher*, 55 V.I. 565, 571 (V.I. 2011).

## III. DISCUSSION

■■ Better Building argues that this Court must reverse the jury's verdict and remand for a new trial because Lee improperly impeached Williams with a misdemeanor conviction not involving dishonesty, Dr. Nelson's testimony on future medical expenses was merely speculative and could not support the jury's award, and the Superior Court erred in instructing the jury to reduce Lee's future damages to

present value without any evidence that would allow the jury to make that calculation.[2] We address each argument in turn.

## A. Williams's Misdemeanor Conviction

Better Building argues that the Superior Court erred in allowing Lee to impeach Williams with a misdemeanor conviction for possession of stolen property valued at less than $100 because this crime did not involve "any element of false statement, dishonesty or deceit." The Superior Court held that the crime involved "moral turpitude," and therefore was admissible for impeachment purposes. We review the Superior Court's admission of evidence for an abuse of discretion. *Smith v. People*, 55 V.I. 957, 960 (V.I. 2011). The Superior Court "abuses its discretion when it makes a decision that 'rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.' " *Billu v. People*, 57 V.I. 455, 461-62 (V.I. 2012) (quoting *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012)).

Federal Rule of Evidence 609[3] provides that "any crime regardless of the punishment" must be admitted to impeach a witness where "the court

[2] In its brief, Better Building also argues that the Superior Court erred in failing to instruct the jury that Better Building had no duty to warn Lee of a dangerous condition due to Lee's testimony that she saw Williams mop the floor before she fell. But Better Building never requested this jury instruction at trial, and therefore this argument is waived. V.I.S.CT.R. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal."); *Etienne v. Etienne*, 56 V.I. 686, 691 (V.I. 2012) (arguments made for the first time on appeal in civil cases are waived). At oral argument, counsel for Better Building stated that after reconsidering the brief, he should have argued that the Superior Court erred in denying the motion for a directed verdict — an issue briefly raised in the reply brief — in which Better Building argued that Lee had failed to establish negligence because she admitted to seeing Williams mop the floor. This argument is also waived because it was raised for the first time in a reply brief. *Christopher v. People*, 57 V.I. 500, 513 n.7 (V.I. 2012). Furthermore, even if we were to reach this argument, we would reject it. Even assuming Lee saw Williams mopping before she fell, this would not — as a matter of law — absolve Better Building of its duty of reasonable care. *See, e.g., Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind. 1990) (the duty of care is "not extinguished by the knowledge of [an invitee] concerning potential risks on the premises" (internal quotation marks and citation omitted)); *Adee v. Evanson*, 281 N.W.2d 177, 179-80 (Minn. 1979) (the trial court erred by instructing the jury that a business owner had no duty to warn of a dangerous condition where the customer knew of the condition).

[3] The Federal Rules of Evidence apply in the Superior Court pursuant to section 15(b) of Act No. 7161, 2010 V.I. Sess. Laws, which took effect on April 7, 2010. *see Simmonds v. People*, 59 V.I. 480, 498-99 (V.I. 2013).

can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement." FED. R. EVID. 609(a)(2); *see also Walker v. Horn*, 385 F.3d 321, 334 (3d Cir. 2004) (" 'The proper test for admissibility under Rule 609(a)(2) does not measure the severity or reprehensibility of the crime, but rather focuses on the witness's propensity for falsehood, deceit or deception.' " (quoting *Cree v. Hatcher*, 969 F.2d 34, 38 (3d Cir. 1992))).

 Under 14 V.I.C. § 2101, in order to be convicted for possession of stolen property valued at less than $100, a person must buy, receive, or possess property valued at $100 or less which he knows or should know was unlawfully obtained, or he must conceal or withhold such property from its owner. 14 V.I.C. § 2101(b). While concealment may involve an act of deceit, *see McHenry v. Chadwick*, 896 F.2d 184, 189 (6th Cir. 1990) (the crime of concealing stolen property was admissible under Rule 609), this is not a necessary element under section 2101, as the section can also be violated through buying, receiving, or possessing stolen property. And if Williams violated the statute by buying, receiving, or possessing stolen property, his conviction would not be admissible under Rule 609(a)(2) because a crime of dishonesty or false statement must "involve[] some element of active misrepresentation," *United States v. Washington*, 702 F.3d 886, 893 (6th Cir. 2012), "irrespective of whether the witness exhibited dishonesty or made a false statement in the process of the commission of the crime." FED. R. EVID. 609 advisory committee's note (2006); *see also United States v. Sellers*, 906 F.2d 597, 603 (11th Cir. 1990) ("crimes such as theft, robbery, or shoplifting do not involve dishonesty or false statement within the meaning of Rule 609(a)(2)" (internal quotation marks and citations omitted)); *Gov't of the V.I. v. Toto*, 529 F.2d 278, 280-81 (3d Cir. 1976) ("[A] witness may be impeached by evidence of a prior [misdemeanor] conviction only if [it] is . . . in the nature of *crimen falsi*. . . . [which] describes crimes involving . . . dishonesty.").[4] Therefore, because an act of dishonesty or false statement is not an essential element of possession of stolen property under 14 V.I.C.

---

[4] Lee argues that the Superior Court applied the correct standard, and appears to suggest that *crimen falsi* and moral turpitude are one and the same. But this is not the case. While perhaps all *crimen falsi* crimes are those of moral turpitude, the opposite is not true. *United States v. Scisney*, 885 F.2d 325, 326 (6th Cir. 1989) ("[C]rimes involving 'dishonesty or false statements' implicate 'moral turpitude,' [but] 'moral turpitude' [does not] always involve[] 'dishonesty or false statements' as that term was intended by Congress."). Further, every case Lee

§ 2101, the Superior Court could not "readily determine that establishing the elements of the crime required proving . . . a dishonest act or false statement" as required for admission under Rule 609(a)(2). And even though Lee introduced the arrest record and the Superior Court's Judgment and Commitment, neither of these documents indicated the nature of Williams's crime, nor did they "show that the factfinder had to find . . . an act of dishonesty or false statement" in order to convict Williams. FED. R. EVID. 609 advisory committee's note (2006) ("Where the deceitful nature of the crime is not apparent from the statute and the face of the judgment . . . a proponent may offer . . . an indictment, a statement of admitted facts, or jury instructions to show that the factfinder had to find . . . an act of dishonesty or false statement in order for the witness to have been convicted."). Without any indication that Williams's conviction involved dishonesty, the Superior Court abused its discretion in admitting Williams's misdemeanor conviction for possession of stolen property under Rule 609(a)(2).[5]

■ Despite this error, "[n]o error or defect in any ruling . . . by the Superior Court . . . is ground for granting relief or reversal on appeal where its probable impact, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." V.I.S.CT.R. 4(i). "Whether an evidentiary error implicates a substantial right depends on 'the likelihood that the error affected the outcome of the case.' " *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 319 (2d Cir. 2004) (quoting *Malek v. Fed. Ins. Co.*, 994 F.2d 49, 55 (2d Cir. 1993)).

---

cites in support of her argument was decided before the promulgation of the Federal Rules of Evidence in 1975 — which supplanted the moral turpitude standard some federal circuits had used before that time. *See, e.g.*, *United States v. Remco*, 388 F.2d 783, 786 (3d Cir. 1968) (the trial court did not err in admitting a crime of moral turpitude to impeach a testifying criminal defendant).

[5] We note that the Superior Court judge who entered Williams's conviction was the same judge who presided over the trial in this case. Therefore, it is possible that the court was aware of the manner in which Williams violated section 2101 when it allowed Lee to impeach him with this conviction. But because the court identified the wrong legal standard and provided no explanation for its decision beyond finding that the crime was one of moral turpitude, this possibility does not change our analysis. *See Rieara v. People*, 57 V.I. 659, 668 (V.I. 2012) ("While we apply an abuse-of-discretion standard . . . meaningful review is not possible where the trial court fails to sufficiently explain its reasoning.").

Here, in addition to the conviction for possession of stolen property, Lee also impeached Williams with a conviction for third-degree burglary. But unlike the conviction for possession of stolen property, Better Building did not object to the admission of the burglary conviction, and — because third-degree burglary is a felony under Virgin Islands law, *see* 14 V.I.C. § 444 — this conviction was properly admitted for the purposes of impeachment. *See* FED. R. EVID. 609(a)(1)(A) (where there is no claim of undue prejudice under Rule 403, "a crime that, in the convicting jurisdiction, was punishable . . . by imprisonment for more than one year . . . must be admitted . . . in a civil case"). Because the jury knew of the more serious conviction for third degree burglary, it is unlikely that the erroneous admission of Williams's misdemeanor conviction contributed to the verdict. *See United States v. Scisney*, 885 F.2d 325, 326 (6th Cir. 1989) (admission of a misdemeanor shoplifting conviction was harmless error because an admissible, more serious conviction "[l]ogically . . . would be the conviction . . . the jury would weigh more heavily in making a credibility determination"); *cf. McHenry*, 896 F.2d at 189 (exclusion of a misdemeanor conviction for concealing stolen property was harmless because it "would have had little, if any, impact on the jury's [credibility] assessment" where the "jury already knew [appellant] was convicted of burglary").

Moreover, the conviction for possession of stolen property was mentioned only twice throughout the trial: once during Williams's testimony and again during closing arguments. *See Scisney*, 885 F.2d at 326 (finding harmless error where — among other factors — the erroneously admitted conviction was only mentioned briefly during cross-examination). During closing arguments, Lee argued that Williams was "convicted of possession of stolen property. He's convicted of burglary, you know. So we have a liar and a thief compared to an honest hard-working woman. You'll have to make that determination, who do you believe." It is clear that in making "that determination," the jury credited at least some of Williams's testimony. Williams testified that he had put out warning signs and that Lee was running when she fell, while Lee testified that she was not running and that there were no warning signs in the area. Because Williams and Lee were the only two witnesses who testified to Lee's actions and the conditions of the floor when she fell, the only way the jury could have found Lee thirty-five percent negligent is if it gave some credit to Williams's testimony. Accordingly, although

the Superior Court abused its discretion in allowing Lee to impeach Williams with a misdemeanor conviction not involving dishonesty, this error was harmless because it is unlikely that it affected the verdict.

## B. Testimony on Future Medical Expenses

 Better Building next argues that the Superior Court erred in overruling its objection to Dr. Nelson's testimony on Lee's future medical expenses because his estimates were speculative.[6] As noted above, we review the Superior Court's admission of evidence for an abuse of discretion. *Smith*, 55 V.I. at 960.

 "It is well settled that an award for future medical expenses may not be based upon mere speculation." *Petrilli v. Federated Dept. Stores, Inc.*, 40 A.D.3d 1339, 838 N.Y.S.2d 673, 678 (N.Y. App. Div. 2007); *see also Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1507 (11th Cir. 1985) ("It is error for a trial court to submit a claim for future medical expenses to the jury if, to make an award, the jury must engage in sheer speculation."). "If a plaintiff seeks future medical expenses as an element of consequential damage, [she] must establish with a degree of reasonable medical certainty through expert testimony that such expenses will be incurred." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 851 (3d Cir. 1990) (quoting *Askey v. Occidental Chem. Corp.*, 102 A.D.2d 130, 477 N.Y.S.2d 242, 247 (N.Y. App. Div. 1984)).

 In this case, Dr. Nelson — Lee's treating physician who had seen her over forty times — testified that Lee was assigned an eighteen percent permanent disability rating and that she was advised that her pain was permanent and there was little else that could be done to treat it. He also testified that according to actuarial tables, Lee would live another forty years and would have to see a doctor every three months at $200 per

---

[6] Better Building also argues that the Superior Court erred in allowing Dr. Nelson to testify to orthopedic expenses that were outside of the scope of his expertise and that "[n]owhere in [Dr. Nelson's] written opinion did he express any opinion as to [Lee's] future medical expenses." But Better Building did not object to Dr. Nelson's testimony on these grounds at trial, and so these arguments are waived. V.I.S.CT.R. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal."). Further, Better Building fails to cite any legal authority in support of these arguments, and so they are waived on this ground as well. V.I.S.CT.R. 22(m) ("Issues . . . only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal.").

visit, would need physical therapy twenty-four times a year at $200 per visit, would need magnetic resonance imaging ("MRI") done of her neck and back every three to five years at $1,500 per MRI, and would have to regularly take pain medication costing $100 to $200 per month. During his testimony, Dr. Nelson did not specifically state that these figures were based on the level of "reasonable medical certainty" required to support an award of future medical expenses. Despite this, "the particular phrase used should not be dispositive," and such testimony should only be excluded where it is "speculative, using such language as 'possibility.' " *Schulz v. Celotex Corp.*, 942 F.2d 204, 208-09 (3d Cir. 1991) (collecting cases). Nowhere in Dr. Nelson's testimony did he suggest that Lee's future medical expenses were merely possible or based on guesswork, nor did he use any other language that would suggest that his opinion was the product of something less than medical certainty. *Accord, id.* at 209 (testimony was admissible where "[t]he expert, an attending physician, testified as to his findings as well as other supporting data and expressed his diagnosis in unequivocal terms"); *see also Fisher v. Nichols*, 81 F.3d 319, 323 (2d Cir. 1996) (rejecting the argument that future medical expenses were speculative where the treating physician testified that the plaintiff "would likely need further medical treatment . . . and that he would probably have ongoing pain over the course of his lifetime"); *cf. Grant v. Farnsworth*, 869 F.2d 1149, 1152 (8th Cir. 1989) (the trial court properly excluded testimony on future medical expenses where the expert "could only guess").

 Additionally, Better Building had ample opportunity to challenge Dr. Nelson's testimony on Lee's future medical expenses — and the underlying diagnosis — on cross-examination, of which it took full advantage. *See Schulz*, 942 F.2d at 209 (the opportunity for "thorough and competent cross-examination" is a factor in considering degree of medical certainty). Therefore, because there is no indication that Dr. Nelson's testimony was merely speculative, the Superior Court did not abuse its discretion in admitting his testimony on Lee's future medical expenses.

### C. Reducing Future Damages to Present Value

Finally, Better Building asserts that the Superior Court erred in instructing the jury on future damages because Lee failed to introduce evidence that would allow the jury to reduce these damages to their

present value. Better Building insists that this error requires us to reverse the jury's award for future medical expenses and remand for a new trial on these damages. At sidebar following the jury instructions, Better Building objected to the instruction on future medical expenses, arguing that there was no evidence to guide the jury's present value calculation. The Superior Court overruled this objection. We review the Superior Court's jury instructions for an abuse of discretion, "unless its decision involves application of a legal precept, in which case this Court . . . exercise[s] plenary review." *Francis v. People*, 56 V.I. 370, 379 (V.I. 2012).

 Jurors are instructed to reduce the amount of a lump sum award for future damages to its present value because — as the United States Supreme Court explained in a federal tort action — "a given sum of money in hand is worth more than the like sum of money payable in the future," and therefore a plaintiff is overcompensated if awarded damages without consideration of the "earning power of the money" over time. *Chesapeake & Ohio Ry. Co. v. Kelly*, 241 U.S. 485, 489, 36 S. Ct. 630, 60 L. Ed. 1117 (1916). Because of this "earning power of money," a jury may reduce the amount of a plaintiff's lump sum award for future damages by a discount rate, which represents the rate of return the plaintiff could earn on a reasonable investment of the future damages award. *See Thorpe v. Bailey*, 386 A.2d 668, 669 (Del. 1978) ("[A] plaintiff with the discounted lump sum in hand may invest it to produce the amount required . . . to pay anticipated medical expenses when they are incurred."). Courts have also recognized that in addition to considering the discount rate, a jury can also consider the fact that inflation diminishes the yield of a reasonable investment — as does taxation on the interest earned from that investment — and adjust the discount rate accordingly. *CSX Transp., Inc. v. Moody*, 313 S.W.3d 72, 88 (Ky. 2010) ("[T]he calculation must account for the fact that the plaintiff will receive the award in a lump sum rather than in periodic payments. That is accomplished by discounting the lump sum at a rate that is based not only on the return from investing the sum in 'the best and safest investments' but also on the extent to which that return is likely to be offset by taxes and inflation." (quoting *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 537-40, 103 S. Ct. 2541, 76 L. Ed. 2d 768 (1983))).

 Calculation of the present value of future damages is governed by the substantive law of the jurisdiction, either by statute or common

law. *Pfeifer*, 462 U.S. at 547; *see also Miller v. Union Pac. R. Co.*, 900 F.2d 223, 226 (10th Cir. 1990) (the "appropriate discounting methods [are] controlled by the law of the forum"). Better Building asserts that the substantive law of this jurisdiction is defined by *Abdulghani v. V.I. Seaplane Shuttle, Inc.*, 746 F. Supp. 583, 25 V.I. 335 (D.V.I. 1990), where the United States District Court of the Virgin Islands — sitting as the local trial court in a personal injury action brought under Virgin Islands law[7] — held that the "plaintiff must produce some method which allows the jury to make a [present value] computation [and] the failure to produce [this evidence] is fatal" to the plaintiff's future damages claim. *Id.* at 596. But decisions of the District Court sitting in its capacity as a local trial court are not binding on the Superior Court. *Parrott v. Gov't of the V.I.*, 230 F.3d 615, 621, 43 V.I. 277 (3d Cir. 2000) (nothing "prevent[s] the [Superior] Court from reviewing prior decisions made by the District Court in cases in which the District Court sat as a local court"); *cf. In re Q.G.*, 60 V.I. 656, 663 n.8 (V.I. 2014) (indicating that the decision of a single trial judge is not binding on other trial judges). Furthermore, we note that the District Court judge in *Abdulghani* applied case law from the United States Court of Appeals for the Third Circuit decided in the context of tort actions brought under federal law. *Abdulghani*, 746 F. Supp. at 593 (citing *Gorniak v. Nat'l R. R. Passenger Corp.*, 889 F.2d 481, 486 (3d Cir. 1989)). But the Superior Court is only required to follow cases the Third Circuit decided while serving in its capacity "as the *de facto* court of last resort in the Virgin Islands,"[8] *Najawicz v. People*, 58 V.I. 315, 327-28 (V.I. 2013), as opposed to those cases decided in its capacity as a federal

---

[7] The District Court had original jurisdiction over most civil actions brought under Virgin Islands law until 1991, when the Legislature granted the Superior Court original jurisdiction over all local civil matters regardless of the amount in controversy. 4 V.I.C. § 76(a) ("[E]ffective October 1, 1991, the Superior Court shall have original jurisdiction in all civil actions regardless of the amount in controversy."); *see also In re Reynolds*, 60 V.I. 332, 335 n.3 (V.I. 2013).

[8] We acknowledge that the Third Circuit — in an appeal from a case decided by the District Court while sitting as the local trial court — has stated in passing that "present worth [is] an obligation that [a] plaintiff must shoulder." *Williams v. Rene*, 72 F.3d 1096, 1102, 33 V.I. 297 (3d Cir. 1995) (citing *Gorniak*, 889 F.2d at 486). But this single sentence, noted in passing and having no bearing on the outcome of that appeal, was merely dictum. *Lander v. Schundler*, 168 F.3d 92, 98 n.6 (3d Cir. 1999) ("[W]e have repeatedly held that dicta are not binding.").

755

court exercising jurisdiction in federal question or diversity cases.[9] *See Edwards v. HOVENSA, LLC*, 497 F.3d 355, 362 n.5, 49 V.I. 1133 (3d Cir. 2007) (before the creation of the Virgin Islands Supreme Court "the District Court's task [in a diversity action] was to 'predict' how [the Third Circuit], sitting essentially as the Supreme Court of the Virgin Islands, would resolve [an] issue of territorial law"); *cf. People v. Simmonds*, 56 V.I. 84, 90 (V.I. Super. Ct. 2012) (Supreme Court case law "suggests that decisions of the Appellate Division and Third Circuit issued after January of 2007 are not binding on [the Superior Court]"). Accordingly, while *Abdulghani* — and the Third Circuit precedent that case relied on — represented persuasive authority, the Superior Court was not bound to follow these cases in addressing Lee's claim for future damages, and of course, neither is this Court. *Defoe v. Phillip*, 56 V.I. 109, 119 (V.I.) (this Court considers Third Circuit case law as persuasive authority), *aff'd*, 702 F.3d 735 (3d Cir. 2012).

 Accordingly, because there was no binding authority here — and the Virgin Islands Code does not address present value in a case like this[10] — whether Lee was required to introduce evidence of present value

---

[9] Treating these federal court decisions as persuasive authority — not only in this Court, but in the Superior Court as well — is clearly in line with the intent of Congress when it provided that "[t]he relations between [federal] courts . . . and the courts established by [Virgin Islands] law . . . shall be governed [in the same manner as] relations between [federal] courts . . . and the courts of the several States." 48 U.S.C. § 1613; *see also Edwards v. HOVENSA, LLC*, 497 F.3d 355, 360-61, 49 V.I. 1133 (3d Cir. 2007) ("We see no reason not to incorporate the federalism principles applicable throughout the circuit into our relationship with the Virgin Islands courts."). The United States Supreme Court and the Third Circuit — like virtually every other court to address this issue — agree that a state court is not required to follow the case law of federal district courts or federal courts of appeals. *See Johnson v. Williams*, ___ U.S. ___, 133 S. Ct. 1088, 1098, 185 L. Ed. 2d 105 (2013) ("the views of the federal courts of appeals do not bind [a state court]"); *Surrick v. Killion*, 449 F.3d 520, 535 (3d Cir. 2006) ("decisions of the federal district courts and courts of appeals, including those of the Third Circuit Court of Appeals, are not binding on [state] courts"); *State v. Gaitan*, 209 N.J. 339, 37 A.3d 1089, 1118 (2012) ("The decision[s] of the Third Circuit [are] not binding on New Jersey courts."); *Hall v. Pa. Bd. of Prob. & Parole*, 578 Pa. 245, 851 A.2d 859, 863 (2004) (adopting the rule that "a decision of [a federal district court or federal court of appeals] should be treated as persuasive, but not binding, authority" on state courts) (collecting cases).

[10] Although the Virgin Islands Code does address present value in the context of wrongful death and medical malpractice actions, no statute governs when the Superior Court must consider present value in other personal injury actions. *See* 5 V.I.C. § 76(e)(1) (providing that future damages in a wrongful death action should be reduced to present value); 27 V.I.C.

to make out a claim for future medical expenses is governed by common law, and the Superior Court erred by applying a common law rule this Court has never addressed without first conducting the appropriate analysis.[11] *Gov't of the V.I. v. Connor*, 60 V.I. 599, 605 (V.I. 2014) (when this Court has not resolved an issue of common law, the Superior Court may not adopt a common law rule without examining the three *Banks* factors); *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 976-80 (V.I. 2011) (the Superior Court has the authority — subject to this Court's review — to shape the common law of the Territory). In addressing issues of Virgin Islands common law, this Court — and courts addressing issues of Virgin Islands common law that this Court has yet to address — must engage in a three-factor analysis: first examining which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally — but most importantly — determining which common law rule is soundest for the Virgin Islands. *Connor*, 60 V.I. at 607; *see also Palisoc v. Poblete*, 60 V.I. 609, 616 (V.I. 2014); *Thomas v. V.I. Bd. of Land Use Appeals*, 60 V.I. 581, 593 (V.I. 2014); *Simon v. Joseph*, 59 V.I. 611, 623 (V.I. 2013); *Matthew v. Herman*, 56 V.I. 674, 680-81 (V.I. 2012); *Faulknor v. Gov't of the V.I.*, 60 V.I. 65, 88 (V.I. Super. Ct. 2014).

The Superior Court and District Court have consistently followed the approach to present value the Third Circuit uses in federal tort actions. *See Abdulghani*, 746 F. Supp. at 593; *Matta v. Majestic Constr., Inc.*, Super. Ct. Civ. No. 109/2007 (STT), 2011 V.I. LEXIS 43 (V.I. Super. Ct. July 26, 2011). Examining how other jurisdictions have resolved this issue, we note that "[t]here is very little direct authority as to whether the plaintiff or the defendant has the burden of presenting evidence of the proper discount rate and the method of applying it to determine the

---

§ 166i (providing that future damages in medical malpractice actions cannot be reduced to present value).

[11] We also note that even if the Superior Court was somehow under the impression that Third Circuit case law on present value was binding here, it committed error under that approach as well. Under the Third Circuit's approach, a trial court errs in allowing a jury to consider future damages when the plaintiff failed to introduce evidence reducing future damages to present value. *See Ballantine v. Central R.R. of N.J.*, 460 F.2d 540, 544-45 (3d Cir. 1972) (reversing and remanding for a new trial on future damages where the plaintiff failed to introduce evidence of present value but the trial court allowed the issue to go to the jury). It is undisputed here that Lee did not introduce any evidence of present value, yet the Superior Court still instructed the jury on future damages.

757

present value of a future loss." 22 AM. JUR. 2D *Damages* § 723 (collecting cases); *see also Wingad v. John Deere & Co.*, 187 Wis. 2d 441, 523 N.W.2d 274, 278 (Wis. Ct. App. 1994) ("There is a split of authority as to this issue in both the federal and state courts."). And while the majority of federal appellate courts addressing this issue have held that a reduction to present value is not an essential element of a plaintiff's future damages claim,[12] state courts are more closely divided.[13]

Courts that require the plaintiff to introduce evidence of the present value of future damages have held that the failure to produce this evidence is a failure to quantify the damages sought with the requisite certainty. *Watkins Co. v. Storms*, 152 Idaho 531, 272 P.3d 503, 511 (2012) (treating evidence of present value as part of a plaintiff's "obligation to produce the required evidence of damages in its case-in-chief"); *Steppi v. Stromwasser*, 297 A.2d 26, 27-28 (Del. 1972) ("[T]he burden is upon the plaintiff to prove the nature and extent of the loss caused by the defendant; . . . . [h]er proof is not complete without evidence of the present value of that loss."). As one court explained — before ultimately rejecting this approach — "it is the plaintiff's burden to prove damages with a reasonable amount of certainty. . . . It would be sensible, therefore, to view present valuation as a necessary calculation that the plaintiff must perform to make his claim for future damages accurate." *Lewin Realty III,*

---

[12] *Compare Gorniak*, 889 F.2d at 486 ("the plaintiff bears the burden of producing evidence from which the trier of fact may make a rational reduction to present value of a lost earnings award"), *with Alma v. Mfrs. Hanover Trust Co.*, 684 F.2d 622, 626 (9th Cir. 1982) (rejecting the Third Circuit approach and placing the burden of introducing evidence of present value on the defendant); *Bonura v. Sea Land Serv., Inc.*, 505 F.2d 665, 669 (5th Cir. 1974) ("The Sixth, Seventh and Eighth Circuits have all rejected [the Third Circuit's] approach.") (collecting cases); *Lewin Realty III, Inc. v. Brooks*, 138 Md. App. 244, 771 A.2d 446, 475 (Md. Ct. Spec. App. 2001), *aff'd*, 378 Md. 70, 835 A.2d 616 (Md. 2003) ("The Third Circuit appears to be the only federal circuit that has adopted the view . . . that proof of present value is a material element of the plaintiff's claim for loss of future earnings.").

[13] *Compare Wingad*, 523 N.W.2d at 278-79 (a plaintiff is not required to prove present value to recover future damages); *CSX Transp., Inc. v. Casale*, 247 Va. 180, 441 S.E.2d 212, 216, 10 Va. Law Rep. 945 (1994) (same); *Ponton v. Watson*, 695 S.W.2d 68, 70 (Tex. App. 1985) (same); *Brady v. Burlington N. R. Co.*, 752 P.2d 592, 594 (Colo. App. 1988) (same), *with Watkins Co. v. Storms*, 152 Idaho 531, 272 P.3d 503, 511 (2012) (the plaintiff has the burden of proving future damages reduced to present value); *Seaboard Coast Line R. Co. v. Burdi*, 427 So. 2d 1048, 1050 & n.4 (Fla. Dist. Ct. App. 1983) (same); *Steppi v. Stromwasser*, 297 A.2d 26, 27-28 (Del. 1972) (same).

*Inc. v. Brooks*, 138 Md. App. 244, 771 A.2d 446, 475-76 (Md. Ct. Spec. App. 2001) (collecting cases), *aff'd*, 378 Md. 70, 835 A.2d 616 (2003).

While this reasoning initially appears in line with the well-established rule that the plaintiff bears the burden of proving her cause of action, many courts have recognized the inherent absurdity in requiring a plaintiff to actively assist the jury in reducing her own award. *See, e.g., Ponton v. Watson*, 695 S.W.2d 68, 70 (Tex. App. 1985) ("It is illogical to require a plaintiff to plead and prove facts which would diminish [her] recovery."). These courts have reasoned that it is unjust to require a party to introduce evidence benefiting her opponent, and instead allocate the burden of proof according to the parties' interests. *See CSX Transp., Inc. v. Casale*, 247 Va. 180, 441 S.E.2d 212, 216, 10 Va. Law Rep. 945 (1994) ("[F]airness dictates that a defendant entitled to the benefit of a [present value] instruction . . . should have the burden of presenting evidence to enable it to reap such benefit."); *Wingad*, 523 N.W.2d at 278-79 ("The introduction of present value evidence, including the discount rate, reduces the plaintiff's award. Logically, it would be in the best interest of the defendant to introduce such evidence because reduction for present value benefits the defendant."). Under this approach, a defendant seeking the benefit of a present value reduction must carry the burden of proving the appropriate discount rate, while a plaintiff seeking an upward adjustment to account for inflation or the effect of taxes bears the burden of proving the appropriate increase rate. *See Alma v. Mfrs. Hanover Trust Co.*, 684 F.2d 622, 626 (9th Cir. 1982) ("Where competent evidence of the discount rate is presented, but the plaintiff fails to establish an inflation rate, the trial court must . . . discount the lump sum award to present value and make no adjustment for inflation. Similarly, where the plaintiff adequately proves the inflation factor, but the defendant fails to establish the discount rate, the lump sum must be adjusted only for inflation."); *Brady v. Burlington N. R. Co.*, 752 P.2d 592, 594 (Colo. App. 1988) ("The burden of procuring and presenting economic evidence [is] on the litigant who would benefit from its acceptance by the fact finder."); *Aldridge v. Baltimore & Ohio R. Co.*, 789 F.2d 1061, 1067 (4th Cir. 1986) ("[I]t seems fair to place the burden of procuring and presenting economic evidence on the litigant who would benefit from its acceptance by the factfinder."), *aff'd on reh'g*, 814 F.2d 157 (4th Cir. 1987), *cert. granted, judgment vacated sub nom. Chesapeake & Ohio Ry. Co. v. Aldridge*, 486 U.S. 1049, 108 S. Ct. 2812, 100 L. Ed. 2d 913 (1988).

 Although it is unclear which approach represents the majority position, this second line of cases undoubtedly represents the sounder rule. *Simon*, 59 V.I. at 625 (determining "the soundest rule for the Virgin Islands" is the overriding consideration in defining the common law). In no other situation does the plaintiff have the burden of introducing evidence undermining her recovery; instead, when there is reason to reduce a plaintiff's recovery — such as when she was comparatively negligent or failed to mitigate her damages — it is uniformly the defendant's burden to raise the issue and support it with appropriate evidence. 22 AM. JUR. 2D *Damages* § 724 ("[I]t is the defendant who has the burden of establishing matters asserted in mitigation or reduction of the amount of the plaintiff's damages.") (collecting cases); *Audette v. Cummings*, 82 A.3d 1269, 1274 (N.H. 2013) ("[D]efendants bear the burden of proving that the plaintiffs failed to mitigate damages."); *Skinner v. R.J. Griffin & Co.*, 313 Ark. 430, 855 S.W.2d 913, 917 (1993) ("[T]he burden of proof is on the defendant to prove comparative negligence."); *see also Commercial Real Estate Inv., L.C. v. Comcast of Utah II, Inc.*, 2012 UT 49, 285 P.3d 1193, 1204 (2012); *Manglona v. Gov't of the N. Mar. I.*, 2010 MP 10 ¶¶ 6-7 (N. Mar. I. 2010). And while it is true that failing to reduce future damages to present value may "result in overpayment to a plaintiff," *Thorpe*, 386 A.2d at 669, so would overlooking a plaintiff's comparative negligence or failure to mitigate her damages. Yet it remains the defendant's burden to plead and prove these matters. We can find no cogent reason to treat these situations differently. *See Casale*, 441 S.E.2d at 216 ("[T]his Court has treated the reduction in a claim for damages . . . as being in the nature of mitigation."); *Wingad*, 523 N.W.2d at 278 ("[R]eduction to present value for future loss of earnings is not exactly a mitigation of damages issue, but a comparable concept."); *Ponton*, 695 S.W.2d at 70 ("[W]e hold that [the defendant has] the burden of proof on the issue of discount rate, just as they do on the issue of mitigation."); *cf. Kelly*, 241 U.S. at 489 (noting in the context of a present value reduction that "a person seeking to recover damages for the wrongful act of another must do that which a reasonable man would do under the circumstances to limit the amount of the damages"). Consequently, establishing the present value of future damages is not an essential element of a plaintiff's future damages claim; rather, if the defendant seeks the benefit of a reduction of future damages to present value, it bears the burden of raising and proving this issue — just as it has

the burden to raise any other matter reducing a plaintiff's recovery. *See Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 182 (5th Cir. 1995) ("[A]n instruction on present value reduction of lost earnings is proper on request of the defendant if there is evidence to support it, but is waived without proper request."); *Laterra v. Treaster*, 17 Kan. App. 2d 714, 844 P.2d 724, 734 (1992) ("[T]he trial court did not err by refusing to give the instruction on present value where [the defendant] failed to present proper foundation evidence or any guidance for the jury."); *cf. Byrd v. Burlington N. R. Co.*, 939 S.W.2d 416, 418 (Mo. Ct. App. 1996) ("A defendant is entitled to a mitigation of damages instruction if there is evidence to support such an instruction.").

▮ In this case, despite the fact that Better Building waived its right to a present value instruction by failing to request one or introduce evidence supporting it, the Superior Court raised the issue *sua sponte* and instructed the jury that "[i]f you find that [Lee] is entitle[d] to recover for future [medical expenses], you must . . . make a reasonable adjustment to reduce the award to . . . present value." Because present value must be treated in the same manner as an affirmative defense, like mitigation of damages or comparative negligence, the Superior Court erred when it gave this instruction *sua sponte* after Better Building failed to introduce evidence of present value and failed to raise the issue. *Cf. Robinson v. Morrison*, 246 So. 2d 94, 95 (Miss. 1971) ("[T]he trial court erred in [giving] a comparative negligence instruction because there was no evidence justifying the granting of such an instruction."); *Blue Ridge Ctr. Ltd. v. Zadeh*, 943 S.W.2d 357, 359 (Mo. Ct. App. 1997) (the trial court erred in raising mitigation of damages *sua sponte*).

▮ Still, this error does not warrant reversal. It is clear that the Superior Court's instruction benefited Better Building — and prejudiced Lee — by requiring the jury to *reduce* Lee's award by the amount she "could reasonably expect to receive on an investment of the lump sum payment." *See Galloway v. People*, 57 V.I. 693, 711 (V.I. 2012) (an appellate court "must assume that juries for the most part understand and faithfully follow instructions"). Yet Lee did not file a cross-appeal or otherwise raise this issue, acknowledging that the jury's "award of future costs, . . . is far less than the amount suggested by" Dr. Nelson's testimony, but nonetheless urging this Court to affirm the jury's verdict. Consequently — while we could reverse and remand for a new trial on future damages without any consideration of present value — we affirm

here because it would be inappropriate to provide an appellee greater relief on appeal than that awarded at trial where she not only failed to file a cross-appeal, but also expressly does not request such relief. *People v. Ward*, 55 V.I. 829, 841 (V.I. 2011) (this Court will not provide an appellee "more extensive relief on appeal" than that received at trial where the appellee has not cross-appealed).

## IV. CONCLUSION

Although the Superior Court abused its discretion in admitting Williams's misdemeanor conviction for possession of stolen property for impeachment purposes, that error was harmless. Further, the testimony on Lee's future medical expenses was not too speculative to support the jury's award. Finally, the Superior Court erred by instructing the jury to reduce any future damages award to present value where Better Building did not request this instruction or introduce evidence to support it. But remanding for a new trial on future medical expenses without consideration of present value would be inappropriate here because doing so would provide greater relief to Lee, and we will not award an appellee greater relief on appeal than she received at trial in the absence of a cross-appeal. Accordingly, we affirm the Superior Court's August 13, 2012 Judgment.